Argued and submitted April 16, affirmed on petition and cross-petition; motion requesting judicial notice allowed May 23, reconsideration denied August 1, petition for review allowed September 18, 1990 (310 Or 393)

FOLAND et al,
*Respondents - Cross-Petitioners,*

*v.*

JACKSON COUNTY et al,
*Respondents - Cross-Respondents.*

LORD et al,
*Petitioners - Cross-Respondents,*

*v.*

JACKSON COUNTY et al,
*Respondents - Cross-Respondents.*

(89-105 and 89-111; CA A63989)

792 P2d 1228

Keith A. Bartholomew, Portland, argued the cause and filed the brief for petitioners - cross-respondents Lord, Skrepetos, Shutes and 1000 Friends of Oregon.

Arminda Brown, Medford, county counsel, argued the cause for respondent - cross-respondent Jackson County. With her on the brief was Georgia L. Daniels, Medford.

Gregory S. Hathaway, Portland, argued the cause for respondent - cross-respondent Provost Development Company. With him on the brief were Richard Baroway, Nancy S. Cameron and Garvey, Schubert & Barer, Portland.

Frank R. Alley, III, Medford, waived appearance for respondents - cross-petitioners Foland.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

**GRABER, P. J.** pro tempore

Petitioners seek review of LUBA's order, which remands Jackson County's land use decisions allowing respondent Provost Development Company (respondent) to site a destination resort on land currently designated and zoned for exclusive farm use.[1] The county's decisions included amendments to its acknowledged comprehensive plan and zoning map. Petitioners contend that LUBA erred by not requiring the county to demonstrate that the amendments comply with Goal 8, as well as with applicable statutes and county legislation, and by holding that the decisions could be based on later studies and maps by the United States Soil Conservation Service (SCS), rather than solely on the county's adopted destination resort siting map.

The destination resort siting section of Goal 8 defines circumstances under which local governments may provide in their comprehensive plans "for the siting of destination resorts on rural lands" without the need for an exception to the resource goals. Subsection (1)(b) provides that "destination resorts allowed by this Goal shall not be sited," *inter alia,* "[o]n a site with 50 or more contiguous acres of unique prime farm land identified and mapped by [SCS]." Subsection (3)(a) provides that "[c]omprehensive plans allowing for destination resorts" shall include a map of "areas where destination resorts are permitted by requirement (1) above."

ORS 197.435 through 197.465 were enacted in an apparent effort to codify the destination resort section of the goal. ORS 197.455(2) is, in relevant part, a material duplication of subsection (1)(b) of Goal 8. ORS 197.465(1) requires comprehensive plans that allow destination resort siting to contain, among other implementing measures, a map of "areas where a destination resort * * * is permitted pursuant to ORS 197.455."

Jackson County has adopted plan and ordinance provisions pursuant to Goal 8. The county's provisions are

---

[1] Cross-petitioners Foland also sought review, but they have not appeared. Respondent also filed a petition for judicial review, which we dismissed on its motion. None of the parties now argues that the grounds on which LUBA remanded the county's decisions were erroneous.

deemed acknowledged under ORS 197.625(1). The destination resort section of the comprehensive plan provides, as material:

> "Destination resorts may be allowed within resource and rural plan and zoning designations, when found to be consistent with Statewide Planning Goals and the Ordinance, particularly standards and criteria contained in Chapter 246. The Destination Resort Overlay District shall not be applied to lands which lands are designated on a map entitled 'Map of Areas Excluded from the Goal 8 Resort Siting Process' adopted by the Board of Commissioners, which is incorporated herein by this reference, except when such lands have had an approved Goal 2 exception * * *:

> "These lands to which the (DR) Overlay District shall not be applied are the following:

> "(i)  Sites with 50 or more contiguous acres of prime farmland identified and mapped by the Soil Conservation Service (SCS) * * *."[2]

The plan also provides, however:

> "Soil mapping as illustrated on the 'Map of Areas Excluded from the Goal 8 Resort Siting Process' is a generalized representation of soils inventories developed by the Soil Conservation Service (SCS). More precise soils resource mapping by SCS * * * may be used to interpret the location of existing sites with prime farmland or with predominantly cubic foot site class 1 or 2 forest lands illustrated on the adopted map."

The parties and LUBA refer to the latter provision as the "refinement clause," and it is the focus of the controversy.

The county has adopted a destination resort siting map. The parties appear to agree that, if the map alone were decisive, respondent's property could not qualify as a destination resort site, unless a goal exception were taken. However, after respondent filed its application, the county procured additional studies and maps from SCS to determine if the property does, in fact, contain 50 contiguous acres of unique prime farmland. The county concluded that the additional

---

[2] Similarly, the destination resort approval criteria in the county's land development ordinance include:

"The proposed resort development is consistent with applicable resort siting criteria specified by Statewide Planning Goal 8, with the Comprehensive Plan, the adopted 'Map of Areas Excluded from the Goal 8 Resort Siting Process * * * and other relevant state law including ORS Chapters 197 and 215."

maps revealed that respondent's property qualifies as a destination resort site. The merits of that conclusion are not an issue here. *But see* n 1, *supra.*

■      The county and respondent contend that the supplemental mapping procedure was authorized by the refinement clause. Petitioners argue that, under Goal 8, ORS 197.435 *et seq* and the county's own legislation, the adopted destination resort map is conclusive; the later SCS maps that the refinement clause purports to authorize cannot be considered. The county and respondent disagree with' that interpretation of the provisions. They also argue that the plan amendment is not subject to independent review for compliance with Goal 8, because the county legislation is acknowledged. Hence, if the plan amendment is permissible under the refinement clause, no further inquiry into its compatibility with Goal 8 can take place, because the clause itself presumptively complies with the goals. Relying on *League of Women Voters v. Metro. Service Dist.,* 99 Or App 333, 781 P2d 1256 (1989), LUBA agreed with the county and respondent, and concluded that, as in that case, the "amendment cannot be invalidated without holding, in all but name, that the acknowledged [refinement clause] is also invalid." *See* 99 Or App at 338. Consequently, LUBA concluded that the acknowledgment of the refinement clause precluded it from conducting independent review of the compatibility of the plan amendment with Goal 8.

Assuming the correctness of petitioner's thesis that the refinement clause is contrary to Goal 8, we disagree with LUBA's reasoning. We emphasized in *League of Women Voters* that we adhered to our previous opinions construing ORS 197.835(4) and holding that plan amendments are reviewable for goal compliance. *See 1000 Friends of Oregon v. Jackson Co.,* 79 Or App 93, 718 P2d 753, *rev den* 301 Or 445 (1986); *Ludwick v. Yamhill County,* 72 Or App 224, 696 P2d 536, *rev den* 299 Or 443 (1985). The "unique circumstances" in *League of Women Voters* compelled us to carve a narrow exception. However, reviewability remains the rule, "if the overlap between the amendment and existing acknowledged provisions is less than total or if those provisions do not control the substance of the amendment." 99 Or App at 338 n 2.

The question in *League of Women Voters* was whether meaningful review for compliance of an amendment

to an urban growth boundary with factors 1 and 2 of Goal 14 was feasible in the face of an acknowledged ordinance provision that made those factors inapplicable to amendments of that kind. In other words, the ordinance *expressly precluded* the compliance that the petitioners sought to have the amendment reviewed for.

Here, the applicable plan and ordinance provisions do not purport to make Goal 8 inapplicable to destination resort siting decisions. To the contrary, the section of the plan that contains the refinement clause also contains an express requirement of goal consistency. Whatever else it may require or allow, the plan therefore requires the county to apply Goal 8 in making its siting decisions. As petitioners argue, that fact alone would make the amendment reviewable for compliance with the goals, even if the refinement clause were inconsistent with such review in the way that the ordinance in *League of Women Voters* was.

However, it is not. Unlike the ordinance in *League of Women Voters,* the refinement clause does not say that Goal 8 is inapplicable to siting decisions. At the most, if petitioners are correct in their understanding of it, the clause would allow factors to be considered in siting decisions that the goal does not contemplate. However, also unlike the provision in *League of Women Voters,* the refinement clause is not mandatory; it says that supplemental SCS mapping *may* be used. Consequently, it does not "control the substance" of any amendment in the way that the Metro ordinance did. We did not suggest in *League of Women Voters* that the existence of one noncomplying provision can support the enactment of new noncomplying provisions that the first one does not *compel.* We decline to extend *League of Women Voters* to these facts. The principle of *League of Women Voters* is limited to situations in which the acknowledged local provision absolutely forecloses the goal compliance of the plan amendment. We conclude that this amendment is reviewable for compliance with Goal 8.

Nevertheless, LUBA's failure to consider the issue of Goal 8 compliance was harmless error. LUBA concluded that ORS 197.435 *et seq* do not preclude the use of supplemental mapping, and the same reasoning applies to Goal 8. Like Goal 8, the statutes contain a siting criterion, ORS 197.455(2), and

a mapping requirement. ORS 197.465(1). Petitioners contend that the wording and history of both the statutes and the goal mean that a county's original "resort siting map * * * [is] to be the sole method for determining site eligibility," and that "local government [must] use preexisting [SCS] soil maps in determining the nature and location of prime farmland." LUBA agreed with the county and respondent that the statute does not make adopted plan maps the exclusive means for determining whether the "50 contiguous acres" siting criterion is present in particular cases. Therefore, the supplemental SCS mapping permitted by the refinement clause was also consistent with the statute. We agree with LUBA. Moreover, we do not read the mapping provisions of either ORS 197.465 or Goal 8 as mandating that only the originally adopted map can be relevant to a siting decision. They do not suggest that all mapping and studies of the qualifications of particular sites must come to a halt "after a line is first drawn on a map." *Roth v. LCDC,* 57 Or App 611, 617, 646 P2d 85 (1982).

■ Petitioners also argue that, if the state and local provisions do contemplate "ad hoc" determinations based on SCS documents developed after the provisions were adopted, they delegate governmental authority unconstitutionally. Petitioners rely, *inter alia,* on *Meyer v. Lord,* 37 Or App 59, 586 P2d 367 (1978), *rev den* 286 Or 303 (1979), where we rejected a challenge to LCDC's adoption in Goal 3 of the SCS soil capability classification system. We concluded that, because the goal incorporated only the standards in effect at the time of its adoption, it did not delegate LCDC's authority impermissible.

We adopt respondent's answer:

"This case does not concern adoption of a 'set of standards' * * * [but the] *application* of SCS soil classification standards to specific property. Such application, through SCS mapping and identification, changes neither the system nor the standards. These actions are in conformity with the previously adopted system and standards." (Emphasis respondent's; footnote omitted.)

There is no delegation problem.

Petitioners have filed a motion asking that we take judicial notice of an agenda and related documents prepared

by the Department of Land Conservation and Development. We allow the motion, but the documents merit no discussion.

Affirmed on the petition and cross-petition; motion requesting judicial notice allowed.