Argued and submitted November 6, 1990, the decisions of the Court of Appeals and Land Use Board of Appeals affirmed, in part on different grounds March 7, 1991

Paul FOLAND
and Connie Foland,
*Respondents on Review,*

*v.*

JACKSON COUNTY,
*Respondent on Review,*

*and*

PROVOST DEVELOPMENT COMPANY,
*Respondent on Review,*

Cynthia LORD,
Chris Skrepetos, Ogden Shutes, Rodna Shutes
and 1000 Friends of Oregon,
*Petitioners on Review,*

*v.*

JACKSON COUNTY,
*Respondent on Review,*

*and*

PROVOST DEVELOPMENT COMPANY,
*Respondent on Review.*

(LUBA No. 89-105, 89-111; CA A63989; SC S37270)

807 P2d 801

Keith A. Bartholomew, Portland, argued the cause and filed the petition for petitioners on review.

Arminda Brown, Medford, County Counsel, argued the cause for respondent on review Jackson County. With her on the response were Gregory S. Hathaway, Virginia L. Gustafson, and Garvey, Schubert & Barer, Portland.

Gregory S. Hathaway, Portland, argued the cause for respondent on review Provost Development Company. With him on the response were Virginia L. Gustafson, Richard Baroway, and Garvey, Schubert & Barer, Portland.

Frank R. Alley III, waived oral argument for respondents Paul Foland and Connie Foland.

Before Peterson, Chief Justice, and Carson, Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This land use case concerns the siting of a proposed destination resort in Jackson County. We must decide whether what petitioners on review label as a "Comprehensive Plan and Zoning Map Amendment" to Jackson County's comprehensive plan is reviewable for compliance with ORS 197.435 *et seq* and state-wide planning Goal 8, and whether the county is bound by its original map of "Areas Excluded from the Goal 8 Resort Siting Process," adopted pursuant to Goal 8.

The Land Use Board of Appeals (LUBA) found that the plan amendment was not reviewable for Goal 8 compliance. LUBA also found that the plan amendment complied with the statutes relating to the adoption of plan amendments, but remanded the siting proposal to Jackson County for further consideration of whether the proposal met certain statutory and other criteria for resort developments. LUBA thus concluded that the county was not bound by its original map of areas excluded from resort development. *Foland v. Jackson County,* 18 Or LUBA 731 (1990).

The Court of Appeals held that LUBA erred in holding that the plan amendment was not reviewable for Goal 8 compliance, but that the error was harmless because the plan amendment complied with Goal 8 as well as with other relevant statutes. The Court of Appeals concluded that Jackson County was not bound by its original map of areas excluded from resort development. *Foland v. Jackson County,* 101 Or App 632, 792 P2d 1228 (1990). We affirm the decision of the Court of Appeals, in part on different grounds, and we affirm the decision of LUBA, in part on different grounds.

### STATUTORY FRAMEWORK

The underlying dispute in this case can best be understood within the statutory framework in which it arises. The Legislative Assembly has created a broad program for comprehensive land use planning coordination. *See generally* ORS Ch 197 (Comprehensive Land Use Planning Coordination). To supervise that program, the Legislative Assembly created the Land Conservation and Development Commission (LCDC) and gave that agency certain duties and powers. ORS 197.030 *et seq.* One of LCDC's duties is to adopt

state-wide land use planning "goals" (the goals) that LCDC considers necessary to carry out, *inter alia,* the statutory program of land use planning coordination. ORS 197.225; ORS 197.040(1)(c); ORS 197.015(8).

Cities and counties of Oregon generally are required to conduct all land use planning in accordance with the goals adopted by LCDC. ORS 197.175(1). To serve that purpose, the statutes direct each city and county to prepare and adopt a "comprehensive plan" for land use decisions. ORS 197.175(2)(a). A comprehensive plan must comply with the goals. ORS 197.250.

The statutes also provide for LCDC "acknowledgement" of a comprehensive plan's compliance with the goals. ORS 197.251(1), in part, reads:

"Upon the request of a local government, [LCDC] shall by order grant, deny or continue acknowledgement of compliance with the goals."

The acknowledgment process allows persons to submit written comments and objections to the plan, requires LCDC to prepare a report concerning acknowledgement, and allows an opportunity for the city or county and persons who submitted comments at the earlier stage to submit written exceptions to the report. ORS 197.251(2). The incentive for a city or county to seek acknowledgement is that once LCDC grants acknowledgement, the city or county no longer is technically required to make land use decisions in compliance with the goals; rather, it is required only to make land use decisions in compliance with the acknowledged plan and other acknowledged ordinances adopted by the city or county. ORS 197.175(2)(d); ORS 197.013(11); *compare* ORS 197.175(2)(c) (if comprehensive plan is not acknowledged then city or county must make land use decisions in compliance with the goals). As LCDC has explained:

"[L]ocally adopted comprehensive plans must be consistent with the statewide planning goals. The plans are reviewed for such consistency by [LCDC]. When LCDC has officially approved a local government's plan, that plan is said to be 'acknowledged.' An acknowledged local comprehensive plan *is the controlling document* for land use in the area covered by that plan." LCDC, *Oregon's Statewide Planning Goals* 1

(1990) (hereinafter Statewide Planning Goals). (Emphasis added.)

This policy of not requiring a city or county to make land use decisions in compliance with the goals after plan acknowledgment has been obtained provides the entire basis for the integrity of the acknowledgment process. Once a plan has been acknowledged, a land use decision made in compliance with an acknowledged plan is *ipso facto* in compliance with the goals. To require a city or county which has an acknowledged plan nonetheless to make all of its land use decisions by separate reference to and in compliance with the goals would make an acknowledgement meaningless.

One of a city's or county's duties in regard to its comprehensive plan is to review that plan and, if necessary, amend and revise it to comply with the goals. ORS 197.250 (compliance required); ORS 197.255 (review required); ORS 197.175(2)(a) (amend and revise). Various procedures, including notice to LCDC, must be followed before an acknowledged plan may be amended. ORS 197.610 *et seq.* LCDC is also required to review periodically acknowledged plans to ensure their continuing compliance with the goals. ORS 197.640(1). LCDC may require a city or county to amend its acknowledged plan. ORS 197.647(4)(b).

If a plan previously has been acknowledged, then an amendment to that plan is also acknowledged by operation of law if no notice of intent to appeal is filed within 21 days from the date on which the city or county mails notice of the amendment to persons who are entitled to such notice. ORS 197.625(1);[1] ORS 197.830(8); *see also* ORS 197.615(2)(a) (identifying persons entitled to notice of adoption of amendment). During the 21 day period, any person who participated either orally or in writing in the proceeding leading to the adoption of the amendment may challenge that decision

---

[1] ORS 197.625(1) provides in relevant part:

"If no notice of intent to appeal is filed within the 21-day period set out in ORS 197.830(8), the amendment to the acknowledged comprehensive plan * * * shall be considered acknowledged upon the expiration of the 21-day period. An amendment to an acknowledged comprehensive plan * * * is not acknowledged unless the adopted amendment has been submitted to the director as required by ORS 197.610 to 197.625 and the 21-day appeal period has expired, the board affirms the decision or the appellate courts affirm the decision."

through an appeal to LUBA. ORS 197.620; ORS 197.830. Filing of an appeal delays acknowledgement of an amendment unless and until LUBA or the appellate courts affirm the decision. ORS 197.625.

The foregoing statutes provide the framework for review of the issues involved in this case. In its broadest terms, this case involves the interrelationship between three factors: (1) the state-wide planning goals (Goal 8 in particular); (2) a county's acknowledged comprehensive plan; and (3) the county's decision to amend its acknowledged plan.

## FACTS

A. *Goal 8.*

In the mid-1970s, pursuant to its duty to establish state-wide planning goals, LCDC adopted, *inter alia,* "Goal 8." *See* Land Conservation and Development Commission, *Statewide Planning Goals and Guidelines* 25-26 (1974) (setting out Goal 8). That goal embodies the standards used to determine Oregon's recreational needs.

From the time LCDC adopted Goal 8, one recurring problem was the siting of recreational resorts. Land developers who sought approval from local governments to site a resort within the government's boundaries faced a difficult process in complying with LCDC goals. LCDC has described that difficulty and how the problems that plagued that process ultimately led to amendments of Goal 8 (to streamline the resort siting process):

"Oregon's Statewide Planning Goals, adopted in the mid-1970's, were designed to prevent urban sprawl and protect farm and forest lands. They did this by restricting or prohibiting subdivisions and other forms of housing development outside of cities and other developed area. This meant that a 'goal exception', a state variance of sorts, was required for any major housing development outside urban growth boundaries, including destination resorts.

"While the exceptions process was designed to deal with special cases, like destination resorts, it didn't do a very good job. * * *

"Resort developers complained. They argued that the exceptions process was too complicated and drawn out. They said it prevented any new resorts from being built. In 1982,

Governor Atiyeh's Land Use Task Force reviewed the record and agreed with the developers. They said the state's rules ought to allow destination resorts on farm and forest land. In 1983, Governor Atiyeh asked LCDC and the Economic Development Commission to come up with a solution. They did. In 1984, LCDC proposed and then adopted amendments to Goal 8 which provided for siting destination resorts.

"The Goal 8 amendments solved most of the problems with the exceptions process. It defined what a 'destination resort' is and provided clear standards for approving new resorts. The Goal says where resorts may be allowed without a goal exception. It's up to counties to implement the Goal through their plans.

"In 1987, the Legislature made some additional changes. They revised Goal 8's requirements for destination resorts and added a category of 'small resorts.' The result is that Oregon counties now have several options for approving resort developments." *Oregon Department of Land Conservation and Development's Destination Resort Handbook: A Guide to Statewide Planning Goal 8's Procedures and Requirements for Siting Destination Resorts* 1 (1989) (hereinafter Destination Resort Handbook).[2]

House Bill 3097, passed by the 1987 Legislative Assembly, 1987 Or Laws Ch 886, substantially adopted and codified LCDC's amendments to Goal 8. ORS 197.435 *et seq.* (the destination resort statutes).[3] Any discrepancies between Goal 8 and the destination resort statutes are not relevant to this case.

Amended Goal 8 and the destination resort statutes

---

[2] The Destination Resort Handbook contains a "special note" that states:

"This handbook is intended to provide general guidance and background information on siting requirements for destination resorts. The handbook is not intended to interpret Goal 8 requirements or substitute for goal or ordinance language."

[3] One significant aspect of the streamlined procedures for resort siting provided for in Goal 8, as amended, and the destination resort statutes is that those procedures did not purport to supersede or replace the pre-1984 exception process. They were intended to be merely an additional, easier method for accomplishing the same end result. *See* ORS 197.450 (destination resort siting without taking goal exception).

The amendments provide that if a proposed resort meets certain size, investment, and siting criteria, the resort does not have to satisfy certain requirements for exceptions to state-wide Goals 3 (preservation of agricultural lands), 4 (preservation of forest lands), 11 (timely orderly arrangement of public facilities and services), or 14 (orderly and efficient transition from rural to urban land use). ORS 197.450.

allow counties to adopt procedures for destination resort siting by amending their comprehensive plans to provide for destination resort siting.[4] ORS 197.465; Statewide Planning Goals, at 8. As an implementing measure for destination resort siting, a plan amended to require such siting is required, *inter alia,* to create a map of areas where destination resorts are permitted and not permitted. ORS 197.465(1); Statewide Planning Goals, at 8. Significant to this case, one type of land where a destination resort is not permitted is on "a site with 50 or more contiguous acres of unique or prime farmland identified and mapped by the United States Soil Conservation Service[.]" ORS 197.455(2); Statewide Planning Goals, at 8.

B.ʹ *Jackson County's acknowledged comprehensive plan.*

Although the record does not specify the date, at some point after LCDC first promulgated the goals and before December 1986, Jackson County (the county) adopted a comprehensive plan and, pursuant to the statutory procedure, sought and obtained LCDC acknowledgment.

C. *Amendment of the Jackson County plan.*

On December 17, 1986, in response to the 1984 amendments to Goal 8, the county amended its acknowledged comprehensive plan to provide for destination resort siting. The decision to implement those amendments was not appealed and, therefore, the amendments were acknowledged by operation of law. *See* ORS 197.625(1) (acknowledgment of amendments to acknowledged plans).

As part of its amendment to its acknowledged comprehensive plan, the county, in compliance with Amended Goal 8, prepared a map identifying property on which destination resorts were not permitted, *e.g.,* property with 50 or more contiguous acres of unique or prime farmland identified and mapped by the United States Soil Conservation Service. The county labeled this map: "Map of Areas Excluded from Goal 8 Resort Siting Process." Areas on the map where destination

---

[4] ORS 197.445 provides in part:

"A destination resort is a self-contained development that provides for visitor-oriented accommodations and developed recreational facilities in a setting with high natural amenities."

resorts were permitted were labeled: "Destination Resort Overlay District."

According to the amended acknowledged comprehensive plan, however, the county's original map was not dispositive regarding which property would and which property would not permit destination resort development pursuant to Goal 8 procedures. The plan also included the following provision:

> "Soil mapping as illustrated on the 'Map of Areas Excluded from the Goal 8 Resort Siting Process' is a generalized representation of soils inventories developed by the [United States] Soil Conservation Service (SCS). *More precise soils resource mapping by SCS issue [sic] may be used to interpret the location of existing sites with prime farmland or with predominately cubic foot site class 1 or 2 forestlands illustrated on the adopted map.*" (Emphasis added.)

This provision is referred to as the "refinement clause" because it allows the county to refine its map in relation to specified excluded sites based on more precise maps provided by SCS. The county describes this process of generalized mapping and refined mapping as a "two-step mapping system."

D. *The property at issue.*

In May, 1987, Provost Development Company (Provost) requested a "Comprehensive Plan and a Zoning Map Amendment" (Provost's proposal) to provide for a Destination Resort Overlay District designation for about 270 acres of rural land in Jackson County which, at the time of the request, was zoned for exclusive farm use. Provost proposed to build a destination resort on that land.[5] The Jackson County Planning Commission recommended that the Jackson County Board of Commissioners (the board) approve Provost's proposal. The board held several public hearings, after which it directed the preparation of findings, conclusions, and an order for a "resolution of an intent to rezone" the property for destination resort use. The board thereafter adopted the findings, conclusion and order approving the development.

---

[5] Provost's proposed destination resort would include an 18-hole golf course with clubhouse; a conference center with banquet and meeting rooms; food and beverage facilities with minimum seating for 150 persons; a 145-160 room hotel; 30 cottages for rentable overnight lodging; 70-100 single family detached or condominium units not for overnight lodging; health clubs for use by resort guests; and retail specialty shops.

The board, in making its decisions, pursuant to the refinement clause, used additional SCS mapping to determine whether Provost's property contained 50 or more acres of contiguous or unique prime farmland. Notwithstanding the previous designation on Jackson County's "Map of Areas Excluded from Goal 8 Resort Siting Process" that the land contained 50 or more contiguous acres of unique or prime farmland, the board, in its opinion, found that the land did not contain 50 or more contiguous acres of unique or prime farmland.

After the county, through the board, made its decision to adopt Provost's proposal, petitioners appealed that decision to LUBA. Before LUBA, petitioners argued, *inter alia,* that Provost's proposal was contrary to Goal 8 and the destination resort statutes.

LUBA did not reach the issue of Goal 8 compliance. LUBA held that Provost's proposal could not be reviewed for compliance with Goal 8. LUBA came to that conclusion because that proposal was so closely related to an acknowledged plan provision (the refinement clause) that the challenged proposal could not be found inconsistent with Goal 8 "without concluding that the acknowledged plan violates Goal 8" (which, by virtue of its acknowledgement, is not subject to review for goal compliance). *Foland v. Jackson County, supra,* 18 Or LUBA at 752. LUBA also held that the county's two-step mapping system (permitted by the acknowledged plan's refinement clause) is permissible under the destination resort statutes.[6]

---

[6] Ultimately, however, LUBA remanded this case to the county for reasons not relevant to this appeal. LUBA found that the board erred: in concluding that the SCS had identified and mapped the property as containing less than 50 contiguous acres of prime farmland; in failing to identify an available method for providing adequate sewage disposal and domestic water service to the proposed development; in finding that there is adequate irrigation water available to serve the proposed development; and in finding that the developer demonstrated sufficient available financial resources to undertake the project. In this appeal, none of the parties argues that the grounds on which LUBA remanded the county's decision were erroneous. Our decision today allows this remand to continue. Had we found that the county was precluded from changing its map, that remand would have been moot because the map to which the county would have been bound would have precluded a resort development on Provost's property. By way of direction, our decision today does nothing to change what the issues will be on remand; all that we decide is that the county is not bound by its original map. When the county changes the map, however, all relevant siting criteria (per the county's plan and ORS 197.455) must still be met

Petitioners[7] appealed, to the Court of Appeals, LUBA's holdings that the county's adoption of Provost's proposal could not be reviewed for Goal 8 compliance and that the two-step mapping system is consistent with the destination resort statutes. Petitioners argued that the county could not ignore its original "Map of Areas Excluded from Goal 8 Resort Siting Process" (that excluded Provost's property from resort development) in favor of the county's "refined" map (that did not).

The Court of Appeals held that LUBA erred in holding that the Provost's proposal could not be reviewed for Goal 8 compliance. *Foland v. Jackson County, supra,* 101 Or App at 636-37. The court concluded, however, that the error was harmless because the proposal did comply with Goal 8's requirements, *id.* at 637-38, and held that the proposal was consistent with the destination resort statutes. *Id.* at 638. The court also concluded that the county may appropriately rely on its two-step mapping system (permitted by the acknowledged plan's refinement clause) and more detailed SCS maps specifying the quantity of farmland in a given area. The court determined that that mapping system per the refinement clause was consistent with Goal 8.

On review to this court, petitioners contend that Jackson County is bound by its original "Map of Areas Excluded from Goal 8 Resort Siting Process," and that the Court of Appeals erred in affirming the section of LUBA's decision that allows the county to rely on "*ad hoc* determinations" by the SCS of the quantity of prime farmland on a proposed site. Jackson County and Provost respond that petitioners have misconstrued LUBA's and the Court of Appeals' holdings, and that petitioner's construction of Goal 8 and the destination resort statutes is not supported by the Goals' and statutes' language or legislative history.

## ANALYSIS

We agree with the Court of Appeals' result and the reasoning in that part of its opinion that holds that the

---

in order for the county to be able to properly designate Provost's property as suitable for resort development. *See Foland v. Jackson County, supra,* 18 Or LUBA at 765 n 29.

[7] Petitioners Foland did not appear in the Court of Appeals or in this court.

county's mapping system is reviewable for consistency with relevant statutory requirements and that the plan is consistent with the destination resort statutes. *Foland v. Jackson County, supra,* 101 Or App at 638. Nothing in the mapping requirements of ORS 197.465 or 197.455 leads to the conclusion that a local government's original map of areas excluded from resort development is intended to be the exclusive and final source for a determination of where resorts are to be allowed.

■ We disagree, however, with that part of the Court of Appeals' opinion holding that Provost's proposal is subject to independent review for Goal 8 compliance. We hold that Provost's proposal is not subject to review for such compliance. In this respect, we agree with LUBA's conclusion. Our reasoning, however, is different than LUBA's.

Under our land use laws, an amendment to an acknowledged comprehensive plan may be appealed to LUBA and scrutinized for its compliance with the state-wide planning goals if the appeal follows the procedure set forth in the statutes, *e.g.,* filing a notice of appeal within the relevant 21 day time period. ORS 197.835(4); ORS 197.625. Once an amendment to an acknowledged plan is itself acknowledged, however, the amendment is insulated from scrutiny for goal compliance by LUBA, the Court of Appeals, and this court.[8] Indeed, the Court of Appeals has held, as did LUBA in this case, that in certain situations even an unacknowledged amendment may not be subject to review for goal compliance. *See, e.g., League of Women Voters v. Metro. Service Dist.,* 99 Or App 333, 338, 781 P2d 1256 (1989) (an amendment may not be declared invalid for non-compliance with state-wide goals if holding the amendment invalid also declares invalid, in all but name, an acknowledged provision in the plan); *Foland v. Jackson County, supra,* 18 Or LUBA at 751-52 (same).[9]

---

[8] This is not to say, however, that LCDC may not review a city's or county's acknowledged comprehensive plan and amendments for continuing compliance with the goals. *See, e.g.,* ORS 197.640(3) (periodic LCDC review of local government plans for continuing goal compliance).

[9] Given our disposition of this case, we express no opinion on the merits of the position taken by the Court of Appeals and LUBA in the cited cases.

In any event, the prerequisite for reviewability for goal compliance in the first place is that the local government's action be an "amendment" to the acknowledged comprehensive plan. ORS 197.620; ORS 197.625(1); ORS 197.835(4); ORS 197.830(8). If the local government's action is merely an action *under* its acknowledged comprehensive plan, then that action only need comply with the *plan*.[10] ORS 197.175(2)(d); ORS 197.835(6). *But see* ORS 197.835(3) (decision not an amendment and not subject to an acknowledged plan is subject to review for goal compliance). An acknowledged comprehensive plan is the controlling document for local government land use decisions made under that plan.

In this case, Provost's proposal was not an "amendment" to the acknowledged comprehensive plan. We concede that Provost's request to the county was labeled a "Comprehensive Plan and a Zoning Map Amendment," that label, however, was just that — a label. Jackson County's decision to modify or refine its "Map of Areas Excluded from Goal 8 Resort Siting Process" to change one area on that map from one use designation to another, was not an "amendment" to the acknowledged comprehensive plan. Rather, that decision merely was the county's exercise of its power under the refinement clause — a provision of the acknowledged plan. As such, that decision is not reviewable for Goal 8 compliance. ORS 197.175(2)(d); ORS 197.835.

Stripped to its essentials, petitioners' argument is that *the refinement clause* — the two-step mapping system — (not Provost's proposal) is contrary to Goal 8. The issue whether the refinement clause complied with Goal 8, however, was resolved when the amendment adding that clause to the county's plan was acknowledged. Because the county's decision to change its map is permissible under the refinement clause, there may be no further inquiry into the decision's compatibility with Goal 8. It follows that to the extent the Court of Appeals inquired into the relationship between the refinement clause and Goal 8, the court erred. Provost's proposal to change the map is not a proposed "amendment" to the comprehensive plan; it is a decision which may be made (presuming relevant plan and statutory siting criteria are

---

[10] The local government's decision must, of course, also comply with any relevant statutes.

met) under the acknowledged-amended-comprehensive plan; it must be processed and reviewed under that plan and relevant statutory criteria. In short, we hold that the county is not bound by its original map of "Areas Excluded from the Goal 8 Resort Siting Process." Likewise, the Court of Appeals erred to the extent it inquired into the relationship between Provost's proposal and Goal 8.

The decision of the Court of Appeals is affirmed, in part on different grounds. The decision of the Land Use Board of Appeals is affirmed, in part on different grounds.