Argued and submitted June 22, reversed and remanded with instructions
August 10, 1994

DEPARTMENT OF LAND CONSERVATION
AND DEVELOPMENT,
*Respondent,*

*v.*

FARGO INTERCHANGE
SERVICE DISTRICT,
Marion County, Brent Leathers
and Ed Montecucco,
*Petitioners,*

*and*

CBM DEVELOPMENT,
*Intervenor-Respondent below.*

(LUBA 93-181, 93-182; CA A84101)

879 P2d 224

Jane Ellen Stonecipher argued the cause for petitioners Fargo Interchange Service District and Marion County. With her on the brief was Robert C. Cannon.

Timothy J. Sercombe argued the cause for petitioners Brent Leathers and Ed Montecucco. With him on the brief were Edward J. Sullivan, John H. Nelson and Preston Gates & Ellis.

John T. Bagg, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Petitioners Fargo Interchange Service District (district), Marion County (county), Brent Leathers and Ed Montecucco seek review of LUBA's remands of the district's decision defining the proposed public sewer system for the Fargo Road Interchange area, and of the county's decision that the district's proposal complies with the county comprehensive plan and land use regulations.[1] We reverse.

The area is located in Marion County on rural land, outside an urban growth boundary (UGB), but is designated as freeway interchange and for rural development by the county's acknowledged comprehensive plan. The development of a public sewer system in the area has been the subject of a number of land use actions and decisions preceding those in question, and all of those earlier measures have been approved by LUBA or acknowledged. The earlier measures included the adoption of county comprehensive plan and regulatory provisions, and the taking of Goal 3 and 4 exceptions for the interchange area. The earlier measures culminated in the county's 1992 decision to form the district to "provide sewage services to the interchange properties at the Fargo interchange." The Department of Land Conservation and Development (DLCD) appealed the formation decision to LUBA, which rejected DLCD's contentions and affirmed the decision. *DLCD v. Marion County*, 23 Or LUBA 619 (1992).

In 1993, the district made the decision giving rise to the present proceeding. The decision is captioned "facilities order for construction, operation and financing of sewer service facilities." In general outline, under that decision, the district will own and operate the facilities for the collection and processing of sewage up to the stage of final treatment. That stage will occur at a facility operated by the City of Donald, to which the sewage will be transported through a pipeline system operated by the district. DLCD appealed to LUBA from the district's decision and from the county's decision finding that the system proposed by the district's

---

[1] The county and the district have appeared jointly and Leathers and Montecucco have made a separate joint appearance. For purposes of this opinion, it is unnecessary to differentiate between the petitioners' arguments and we will refer to all of the petitioners collectively by that designation, insofar as they are parties rather than participants.

decision complied with the county's acknowledged land use legislation.[2]

LUBA rejected DLCD's contentions, with two exceptions that are the subjects of petitioners' assignments of error to us. First, LUBA remanded the district's decision. It reasoned that the district was required by ORS 195.020(1) to exercise its planning responsibilities and actions in accordance with the statewide planning goals. LUBA agreed with DLCD that the district was required to demonstrate compliance with Goals 11 and 14, which require, respectively, the "arrangement of public facilities and services to serve as a framework for urban and rural development," and the use of the UGB and other mechanisms to "provide for an orderly and efficient transition from rural to urban land use." LUBA then concluded that the district had not made sufficient findings to show compliance with the two goals. It noted that,

"to the extent the district relies upon the challenged *county* decision to make the required findings, for the reasons explained [in connection with LUBA's disposition of the county's decision, it] does not establish the proposal is consistent with Goals 11 and 14." (Emphasis LUBA's.)

LUBA then turned to the county decision. LUBA agreed with the county that, because its comprehensive plan and land use regulations are acknowledged, it was not required to show that its decision complied directly with the goals or to take exceptions to the goals beyond those that it had taken in the past and that were acknowledged. Rather, the county had only to show that its decision complied with the acknowledged plan and regulations. *See* ORS 197.175-(2)(d); ORS 197.835(6); *Foland v. Jackson County*, 311 Or 167, 807 P2d 801 (1991). LUBA also rejected several challenges by DLCD to the county's interpretations and application of various provisions of its plan. However, LUBA agreed with DLCD in one respect, and remanded the county's decision on that basis.

---

[2] Petitioners contend that DLCD's notice of intent to appeal was insufficient to invoke LUBA's jurisdiction over the district's decision and that other procedural defects precluded LUBA from reaching all of the issues it did. We reject those contentions without discussion.

Urban Growth Policy 7 (policy 7) of the plan provides:

"Urban densities and urban services shall be established only within recognized urban growth boundaries."

It is undisputed that the district and the area of the proposed system are not within a UGB. However, construing policy 7 together with other plan provisions, the county concluded that the district's proposed system was permissible and consistent with the plan.

LUBA disagreed, concluding that the district's proposed system violated policy 7. LUBA again noted that the statewide goals are not directly applicable to the county's decision, but reasoned that, under ORS 197.829(4), the county's interpretation of policy 7 may not be affirmed if it is "contrary to a state * * * land use goal * * * that the comprehensive plan provision * * * implements." LUBA then concluded that "[i]t is clear that plan [policy 7] implements Goals 11 and 14," and that the county's interpretation of the policy was incorrect because the establishment of the proposed sewer system in the area would "extend sewer service to the Fargo interchange from the City of Donald" and, thereby, "extend an urban service outside of an urban growth boundary." Consequently, according to LUBA, the proposal violates Goals 11 and 14 and, in LUBA's view, therefore also violates the county plan policy that implements those goals.

LUBA acknowledged:

"It may be that there is nothing inherently urban about a central sewerage system. As noted earlier [in LUBA's opinion], the Fargo interchange exception area was acknowledged with express authorization for such a central sewerage facility, even though it is not within a UGB." (Footnote omitted.)

Moreover, in *DLCD v. Marion County, supra*, 23 Or LUBA at 625, LUBA had rejected DLCD's argument that the construction of a "public sewerage system outside an urban growth boundary * * * *ipso facto*" violates policy 7, and it had agreed with the county that the challenged decision did not violate that policy when it was read together with "other plan provisions [that] clearly envision the location of sewerage

facilities outside urban growth boundaries in certain circumstances."

In the present appeal, however, LUBA appeared to regard the proposed involvement of the City of Donald treatment facility as the dispositive factor. Rather than a self-contained public system operated in and for the interchange area, the district's decision proposed the use of the city's plant for final processing of sewage. Because the treatment facility *also* serves the city, LUBA explained that "it is unreasonable to ignore that the proposed sewerage treatment service is from the City of Donald treatment facility, an indisputably urban facility." LUBA rejected the "contention that the district serves only a 'rural' area and, therefore, the proposed service is a rural service." LUBA concluded:

> "That the district itself may legally lay claim to being 'rural,' is immaterial. The extension of the urban service from the City of Donald to the district violates plan Urban Growth Policy 7, if that policy is interpreted consistently with Goals 11 and 14." (Footnote omitted.)

Accordingly, LUBA remanded the county's decision as well as the district's.

Petitioners make a variety of arguments to us. They contend that, contrary to LUBA's conclusion, the district did make findings concerning compliance with Goal 11 and Goal 14, which LUBA failed to consider. With respect to LUBA's disposition of the county's decision, petitioners argue, *inter alia*, that the statewide goals have a far more limited application—if any—than LUBA gave them, in the light of the acknowledged status of the county legislation. Relatedly, petitioners contend that ORS 197.829(4) does not contemplate plenary review of local decisions for direct compliance with the goals, as they maintain LUBA effectively engaged in, but contemplates consideration of the goals only for the more limited purpose of determining whether a local government's interpretation of its acknowledged plan and regulations is sustainable.

■ Petitioners also argue, however, that even if LUBA was correct in treating the county's decision as being reviewable for compliance with Goals 11 and 14, LUBA erred in holding that its decision did not comply with those goals.

Although the question of whether and to what extent a land use decision *must* comply with the goals logically precedes the question of whether it *does* comply with them, judicial efficiency would be best served by our deciding this case on the basis of the last question, without first answering the earlier ones. The last question is the one with the most apparent answer in the circumstances of this case; moreover, for reasons we will explain, our conclusion that LUBA was incorrect in holding that the county's decision was inconsistent with the two goals also enables us to arrive at a final disposition of the district's decision, without the necessity for a remand to LUBA or to the district. We emphasize, however, that by deciding that LUBA erred in holding that the decisions violated the goals, we assume *arguendo* that, but do not decide whether, the decisions were properly subject to review for goal compliance at all or to the extent that LUBA reviewed them in that manner.

■ Goals 11 and 14 do not draw a bright line between which uses, facilities and services are urban and which are rural, but largely leave the question for case-by-case resolution, based on a variety of factors. *1000 Friends of Oregon v. LCDC (Curry Co.)*, 301 Or 447, 724 P2d 268 (1986); *Hammack & Associates, Inc. v. Washington County*, 89 Or App 40, 747 P2d 373 (1987). In the Curry County case, the Supreme Court suggested that sewer service might be a significant indicator of urbanization under the facts of particular cases, but not necessarily or invariably a conclusive one.

In this situation, however, virtually all of the relevant questions had been answered before the present proceeding began. The planning process, the acknowledged plan provisions and the county's district formation decision, affirmed by LUBA in *DLCD v. Marion County, supra,* had established that it was permissible under applicable land use standards for a public sewer system to be established by the district in the rural area in question. To whatever extent the acknowledgment of the local legislation and the previous LUBA decision *could* have left unsettled the question of whether Goals 11 and 14 allowed that service by the district in the rural area, *but see* ORS 197.625; *Beck v. City of Tillamook*, 313 Or 148, 831 P2d 678 (1992), LUBA did not hold,

and DLCD does not argue here, that the *district's* provision of that service would violate those goals.

The basis for LUBA's holding was not that the district's operations within its territory, as proposed by its decision and found by the county to be in compliance with its plan and regulations, would violate Goal 11 or Goal 14. Rather, the sole basis for LUBA's remand of the county's decision was that the Donald treatment facility provides some urban level services outside the district, that the district's sewage will be finally treated at that facility and, therefore, that the urban service from the city will be extended beyond a UGB and into the district's rural territory.[3]

Petitioners take the opposite view of what is being extended to what. They reason that all of the facilities for collection and transport are the district's, and that they will be used to bring the sewage *to* the treatment facility for disposal. According to petitioners, no extension or increase in the level or intensity of services can or will result from conducting one facet of the sewer operations at the Donald facility that the previous legislation and decisions authorized the district itself to conduct *in toto* in its own area. They reason that it is immaterial to the urban or rural nature of the service that the extraterritorial treatment facility to which the district will transport the sewage—which it could have treated itself as part of the authorized rural service operation—happens to serve an urban area as well as the district; the overall intensity of the service within the district is unaffected by which entity provides it, and the Donald facility's urban capacity is not being "extended" to the district by reason of its participating in the rural level of service that the district's needs demand.

We agree with petitioners, and we conclude that the district's proposed use of the City of Donald facility does not transform the previously approved rural sewer operations into an urban level use or make the Donald facility an urban one for purposes of its services to the district. Assuming that LUBA was correct in even considering the direct compliance

---

[3] In fact, the Donald treatment facility itself is located outside the UGB. As we understand LUBA's opinion, however, it is the extension of the service capacity rather than the location of the facility that it regards as relevant.

of the use with Goals 11 and 14 in determining whether the county was correct in its interpretation that the use complies with policy 7 of its plan, LUBA erred in ruling that the goals and, therefore, the policy were violated. Accordingly, LUBA was incorrect in not affirming the county's decision.[4]

It follows from our disposition of the county's decision that LUBA also erred by remanding the district's decision. It is correct, as LUBA held, that ORS 195.020(1) generally requires the district's land use decisions to comply with the goals. However, ORS 195.080 provides, as material:

"Nothing in ORS 195.020 * * * shall be construed to prevent planning for, installation of or connection to public facilities or services consistent with acknowledged comprehensive plans and land use regulations."

Under that statute, if the district's decision complies with the county's plan and regulations, as we have held it does, it is affirmable without any separate inquiry into whether it complies with the goals.

ORS 195.080 was enacted through Oregon Laws 1993, chapter 804, section 6, and took effect after the district made its decision. However, LUBA's disposition was to remand that decision for what could only be further findings concerning the consistency of the proposed system with Goals 11 and 14. Because ORS 195.080 is now in effect and because we have held that LUBA erred in remanding the county's decision that the district's proposal is consistent with the county's plan and regulations, no purpose would be served by a remand to the district to make findings concerning approval criteria that are no longer applicable, when it has already met the approval standards that are effective now and that would apply in any remand.

Reversed and remanded with instructions to affirm the decisions of district and county.

---

[4] We reiterate that there was no basis other than LUBA's finding of the goal inconsistency for its holding that the plan policy was violated.