Argued and submitted July 22, affirmed September 2, reconsideration denied December 11, 1987, petition for review denied January 6, 1988 (304 Or 680)

## HOPPER et al,
### *Petitioners,*

*v.*

## CLACKAMAS COUNTY,
### *Respondent.*

## (LUBA 87-007; CA A44545)

741 P2d 921

Robert L. Liberty, Portland, argued the cause for petitioners. With him on the brief was Neil S. Kagan, Portland.

Michael E. Judd, Chief Assistant County Counsel, Oregon City, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioners appealed to LUBA from Clackamas County's approval of the application of Grigory and Anna Anfilofieff to construct a second dwelling on their farm, which is located in an exclusive farm use (EFU) zone. Grigory and Anna reside in the existing dwelling. The proposed new dwelling is for their son Efrem, who, the application states, will "serve as fulltime manager of [the] berry operation" on the farm. The application was made and the approval was given pursuant to ORS 215.283(1)(e) and the corresponding provision of the county zoning ordinance. The statute permits as a use on EFU land:

"A dwelling on real property used for farm use if the dwelling is:

"(A)   Located on the same lot or parcel as the dwelling of the farm operator; and

"(B)   Occupied by a relative, which means grandparent, grandchild, parent, child, brother or sister of the farm operator or the farm operator's spouse, whose assistance in the management of the farm use is or will be required by the farm operator."[1]

LUBA remanded the decision to the county but rejected most of petitioners' arguments. They seek review, and we affirm.

■       Petitioners make two assignments or error. The second is without merit and requires no discussion. The first is that LUBA erred by rejecting their contention:

"The occupant of the accessory dwelling will replace, rather than assist, the farm operator in the management of the farm. This result violates Clackamas County Code Section 401.04B(2) and ORS 215.213(1)(e)(B)."

Petitioners summarize their argument under the assignment:

"LUBA and Clackamas County applied the wrong test to the proposed dwelling and failed to apply tests to the existing

---

[1] The parties do not contend that the appropriate analysis and resolution under the statute and the ordinance might differ for purposes of the issue that we discuss, and we discern no basis for analyzing them separately or differently. ORS 215.213(1)(e) allows the same use, in virtually identical language, as does ORS 215.283(1)(e). Although petitioners' first assignment makes a reference to ORS 215.213(1)(e), their argument, the county's argument and LUBA's opinion refer to ORS 215.283(1)(e) as the statute being considered.

dwelling and thereby may have authorized a nonfarm dwelling in violation of ORS 215.283(3)."

Petitioners posit that Efrem will not simply assist his parents in operating the farm; he will replace them and "be the farmer." Consequently, petitioners reason, there is no justification. to use agricultural land for a second dwelling, because the "son would become the farmer and the father's house would cease to be the farm operator's house."

There is both a factual and a legal aspect to petitioners' argument. We find their factual assertions to be most difficult to reconcile with the record. They represent that "[b]oth [elder] Anfilofieffs are employed full-time in jobs off the farm" and that "the father retired from farming to work at another job." The record shows instead that, in addition to his farm work, Grigory is a self-employed tree-thinner and had been for a period of many years preceding the application. His forest work is seasonal, and he is active in farm work when he is at home. Anna has recently become employed in a cannery and is unable to manage the farm in Grigory's absence, as she did before she became so employed. However, she continues to participate in farm operations. At the time of the application, several of the Anfilofieffs' children, apparently including Efrem, were living with them and assisting at the farm. The county found that the parents' "other jobs * * * keep them from active management of the farm" and that it is necessary that Efrem undertake "the day-to-day management." The finding does not say, nor would the record permit a finding, that Grigory no longer participates to a significant extent in farming activities. LUBA did not, and we do not, agree with petitioners' implication that both parents have given up farming, taken other work and essentially installed Efrem in Grigory's stead as the sole real participant in farm operations.

■ The central point of petitioners' legal argument is that the "county applied the wrong test to the son's house." The tests which the county did apply were those of ORS 215.283(1)(e) and of the ordinance provision relating to "relative dwellings." Petitioners contend that the county should not have applied those tests because, notwithstanding that the application *is* for an accessory dwelling for a relative who assists the farmer, the county should have treated it as an application for a primary farm dwelling, *see* ORS

215.283(1)(f), because Efrem rather than Grigory is in reality to be the farmer. If the proposed dwelling passed that test, according to petitioners, the application could still not be granted unless the *existing* dwelling qualified as an *accessory* one under ORS 215.283(1)(e), which it could do only if Efrem, "as the new farm operator, required his father's assistance in order to manage the farm." If that standard could not be met, petitioners assert, the new dwelling could not be approved unless it or the existing one qualified as a nonfarm dwelling under the rigorous criteria of ORS 215.283(3).

Petitioners' elaborate approach seems to us to replace the one right question with three wrong ones. The question *is* whether the application for Efrem's dwelling should have been granted under ORS 215.283(1)(e) and the ordinance provision.[2] It is unnecessary to treat the application as being for something other than it is to answer that question *and* to reach the real point at which petitioners' argument is—or should be—directed. The point of their argument is that the proposed dwelling cannot qualify as an *accessory* dwelling, because Efrem, rather than his father, will be principally responsible for the farm and an accessory dwelling for a relative should not be permitted unless the present farmer rather than the relative is to remain the dominant participant in the farming activity.

LUBA rejected petitioners' point and explained:

"[The county] states that occupants of both existing and proposed dwellings will be involved with the farm operations; and, therefore, the additional residence is not meant as a replacement farm dwelling.

"[The county] concludes that the 'ordinance [and statute do] not require that activities in furtherance of the farm use be broken down 50/50; nor [do they] require that the occupant of the original farm dwelling spend more time on farming than the occupant of the new dwelling.'

"The ordinance and ORS 215.283(1)(e), authorizing an accessory dwelling for a specified relative, appear to place the determination of when the accessory dwelling is 'required' on

---

[2] The county makes the same point more succinctly. It states that "[t]he most difficult aspect of answering this assignment of error is avoiding the temptation to respond to the irrelevant. Petitioners' smoke screen notwithstanding, the true issue is in fact a simple one * * *."

the farm operator. Here, there has been a change in the operator's farm management. Mrs. Anfilofieff is no longer able to provide the management services she provided while Mr. Anfilofieff was away from the farm. The owner is not relinquishing all farm duties, but the management has changed, and nothing in the ordinance [or statute require] a particular break down of farm duties between the owner and the relative occupying the accessory dwelling."

We agree generally with that reasoning. The critical criterion in ORS 215.283(1)(e)(B) is whether the accessory dwelling is sought for a relative "whose assistance in the management of the farm use is or will be required by the farm operator." We do not construe that phrase to mean that the *amount* of the required assistance is the determinant of whether there may be a relative's dwelling, as long as the "farm operator" continues to have some significant involvement in the farm operations. Nothing in the statutory language suggests that the permissibility of the accessory dwelling is inversely proportional to the level of assistance the relative provides. Indeed, if the level of assistance could be regarded as a determining factor consistently with the statutory language, its relevance would seem to us to cut in the opposite direction from the one petitioners suggest: the more assistance the farmer requires, the greater would be the justification for allowing farm land to be used for a dwelling to house the person whose assistance is required.

■    Petitioners contend, correctly, that there is an overriding statutory and regulatory policy to prevent agricultural land from being diverted to non-agricultural use. *See, e.g., 1000 Friends of Oregon v. LCDC,* 72 Or App 443, 696 P2d 550, *rev den* 299 Or 584 (1985). However, they do not persuade us that that policy requires that the statute be construed as precluding the construction of this proposed dwelling; the statute's clear import is that the construction of such dwellings, under circumstances of the precise kind present here, is related to and promotes the agricultural use of farm land. LUBA did not err in any of the respects that petitioners assert.

Affirmed.