Argued and submitted March 5, 1991, decision of Court of Appeals affirmed, order of
Land Use Board of Appeals affirmed July 9, reconsideration denied October 27, 1992

Mark R. SMITH,
*Petitioner on Review,*

*v.*

CLACKAMAS COUNTY
and Jim Bisenius,
*Respondents on Review.*

(LUBA 89-156; CA A65307; SC S37571)

836 P2d 716

Lawrence R. Derr, Portland, argued the cause and filed the petition for petitioner on review.

Michael E. Judd, Chief Assistant County Counsel, Oregon City, argued the cause and filed the response for respondent on review Clackamas County.

Stephen J. Williams, Salem, argued the cause for respondent on review Jim Bisenius.

FADELEY, J.

**FADELEY, J.**

Clackamas County denied petitioner's request for permission to establish a nonfarm dwelling on seven acres zoned Exclusive Farm Use (EFU). The seven acres is part of petitioner's 54-acre parcel so zoned but is separated from the remaining 47 acres by a county road. The 47 acres is planted in Christmas trees but the seven acres, a portion of which is wooded and steeply sloping, is not.

Clackamas County Zoning and Development Ordinance (ZDO) 402.05.A.4 permits a nonfarm dwelling on EFU land only if the dwelling:

"Is situated upon *generally unsuitable land* for the production of farm crops and livestock, considering the terrain, adverse soil or land conditions, drainage and flooding, vegetation, location and *size of the tract* * * *." (Emphasis added.)

That county ordinance was copied directly from former ORS 215.213(3)(d) (1981), now enacted as ORS 215.283(3)(d), and has been acknowledged as part of the county's comprehensive plan. The issue is whether the county ordinance requires that the county apply the "generally unsuitable land" criterion to the seven acres selected by petitioner when he applied for permits to build a nonfarm dwelling or whether, instead, the county must apply that criterion to the entire 54-acre tract, viewing the seven acres as a part of the larger parcel of commonly owned land, rather than as a separate tract.

The county adopted the latter view, and denied petitioner's request. On review, the Land Use Board of Appeals (LUBA) and the Court of Appeals both affirmed the county's decision. In doing so, they agreed that the entire commonly owned 54-acre tract must be considered when applying the "generally unsuitable land" criterion.[1] *Smith v. Clackamas County*, 103 Or App 370, 797 P2d 1058 (1990). We affirm.

The county found that the seven-acre portion of the property, if considered by itself, was of poor soil quality and that the only likely farm use for that portion of land was propagating and harvesting forest products. The county also

---

[1] Throughout the opinion, we use the phrase "generally unsuitable land" to refer to the ordinance requirement quoted in the text, *supra*. ZDO 402.05.A.4.

found that the seven acres had received a wood lot tax deferral in the past and had some potential for farm use by growing trees as a crop. The county mentioned that use in conjunction with a third party's adjacent property that was operated as a wood lot.

The county considered that applying the agricultural suitability criterion to the entire 54-acre tract was consistent with the intent and purpose of ORS 215.243.[2] Looking at the agricultural suitability of the entire commonly owned parcel, the county denied petitioner's requests.

In his appeal to LUBA, petitioner argued that the county is required to apply ZDO 402.05.A.4 to only the seven acres that he designated in his proposal for nonfarm use. Affirming the county's denial of the permit, LUBA interpreted the county ordinance as being identical in meaning to ORS 215.283(3)(d) (*i.e.*, to former ORS 215.213(3)(d) (1981) from which it was copied).[3] LUBA stated that, although the language of the statute was not precise and was therefore susceptible of more than one interpretation, the appropriate course was to construe the ordinance consistently with the state policy found in ORS 215.243 (directly referred to in

_____

[2] ORS 215.243 provides:

"The Legislative Assembly finds and declares that:

"(1) Open land used for agricultural use is an efficient means of conserving natural resources that constitute an important physical, social, aesthetic and economic asset to all of the people of this state * * *.

"(2) The preservation of a maximum amount of the limited supply of agricultural land is necessary to the conservation of the state's economic resources and the preservation of such land in large blocks is necessary in maintaining the agricultural economy of the state and for the assurance of adequate, healthful and nutritious food for the people of this state and nation.

"(3) Expansion of urban development into rural areas is a matter of public concern * * *.

"(4) Exclusive farm use zoning as provided by law, substantially limits alternatives to the use of rural land * * *."

[3] Oregon Laws of 1983, chapter 826 renumbered and reenacted former ORS 215.213(3)(d) (1981) as ORS 215.283(3)(d). In addition, the 1983 act, by sections 2 and 16, created a new, optional land use classification for "marginal lands." ORS 215.213 (4) to (8) (Or Laws 1983, ch 826, § 6); ORS 215.288 (Or Laws 1983, ch 826 § 16).

A senator, leading the floor debate on the bill, explained that passage of the 1983 act would result in "essentially hav[ing] the status quo for those counties that choose not to use this [new marginal lands designation or soil classification exception.]" Tape recording, Senate floor debate, July 13, 1983, Side 129A.

ordinance ZDO 402.05.A.1) and, therefore, to view the farm capability of the 54 acres as a whole when evaluating whether the seven acres was "generally unsuitable" for agricultural purposes. As noted, the Court of Appeals affirmed LUBA. *Smith v. Clackamas County, supra,* 103 Or App at 375-76.

Our scope of review of LUBA and Court of Appeals' decisions is established in ORS 197.850(9).[4] Smith contends that LUBA's order affirming denial of the permit, and the Court of Appeals' affirmance thereof, are reversible under ORS 197.850(9)(a), as unlawful in substance because LUBA's order was based on a misinterpretation of the applicable law.

LUBA's authority to review a local land use decision is also derived from statute. ORS 197.835 provides in relevant part:

"(7)  In addition * * * the board shall reverse or remand the land use decision under review if the board finds:

"(a)  The local government or special district:

"(D)  Improperly construed the applicable law * * *."

■ ■  Under ORS 197.835(7)(a)(D), LUBA is granted review authority over a county's interpretation of a local land use ordinance. "If a county has construed an ordinance in a manner that clearly is contrary to the enacted language, LUBA acts within its scope of review in finding that the county improperly construed the applicable law." *Clark v. Jackson County,* 313 Or 508, 514, 836 P2d 710 (1992). "In reviewing a county's land use decision, LUBA is to affirm the county's interpretation of its own ordinance unless LUBA determines that the county's interpretation is inconsistent with express language of the ordinance or its apparent purpose or policy." *Id.* at 515.

The general policy against placing agricultural land in a non-agricultural use, on which LUBA and the Court of

---

[4] ORS 197.850(9) provides in part:

"The court may affirm, reverse or remand the order. The court shall reverse or remand the order only if it finds:

"(a)  The order to be unlawful in substance or procedure * * *.

"(b)  The order to be unconstitutional; or

"(c)  The order is not supported by substantial evidence in the whole record as to facts found by the board * * *."

Appeals relied, is not in doubt. The problem presented, however, is to construe a particular local ordinance. Therefore, a more detailed analysis, specific to the words employed by the ordinance dealing with nonfarm dwellings, is required to decide this case. First, we review the background for that analysis.

■ Once a county's comprehensive plan and implementing ordinances have been acknowledged, local land use decisions are to be measured against the plan and ordinances. *Foland v. Jackson County*, 311 Or 167, 180, 807 P2d 801 (1991); *Byrd v. Stringer*, 295 Or 311, 318-19, 666 P2d 1332 (1983) (interpreting ordinance so that it was "consistent with state law" and applying acknowledged ordinance standards rather than goal standards to pre-existing lots).[5]

The inquiry begins with an examination of the language of the enactment. *Whipple v. Howser*, 291 Or 475, 632 P2d 782 (1981). By itself, the ordinance limits the establishment of nonfarm residences on EFU land. It does not, however, define or point to what area of land is meant either by the word "land" or by the phrase, "size of tract." Because the words of the ordinance, on the issue of what tract of land is meant by the statutory reference to "size of tract," are capable of two rational interpretations, we turn to an examination of the context and purpose of ORS 215.213(3), the statute copied by the ordinance.

Because the local ordinance to be interpreted was copied from an earlier legislative enactment, and appears to be aimed at the same problem as that enactment, a summary of that enactment and its context is in order. EFU zones first were statutorily provided for in 1961, as an adjunct to holding

---

[5] LUBA and the parties treat the proper disposition of this case on appeal as dependent on the interpretation given to ORS 215.283(3)(d). For the reasons just stated, that is not the applicable provision of law. We decide this case on the basis of the ZDO enacting the same language. We do note that sitings of nonfarm dwellings in EFU zones, where that requires a division or partitioning of farm land, currently appears to remain subject to certain statutes bearing directly on that issue. ORS 215.263(4) permits county approval of such a division of land "only if the dwelling has been approved under ORS 215.213(3) or 215.283(3)." Moreover, ORS 215.288 provides that the county *must* apply certain statutory provisions to land which has been zoned for exclusive farm use (EFU), when considering whether and where to permit certain dwellings. Those statutes contain the same criteria for nonfarm dwellings as the county ordinance here, so we need not tarry further before deciding this case over distinctions that may exist between such ordinances and statutes.

down property assessments for tax purposes, so that taxable values of certain agricultural land reflected the farm use value of that land, rather than the land's nonfarm development value. Or Laws 1961, ch 695, § 1. In 1963, nonfarm uses, not including dwellings, were first expressly allowed in EFU zones.[6] Or Laws 1963, ch 577, § 3, and ch 619, § 1a. However, the language copied from the statutes into the present subsection A.4 of the county ordinance first appeared in Senate Bill (SB) 101 as enacted by the 1973 legislative session. Or Laws 1973, ch 503, § 4.[7]

The intent of the 1973 amendment was to "make the EFU zone an attractive choice for farmers who wish to keep their land in agriculture and at the same time to discourage speculators from using the tax provisions for farmers by increasing the penalties for change of use." (6-6-1973, 57th Legislative Assembly, Tape 23 side 1 remarks of the Senator who led discussion of SB 101 for the final vote on passage). The senator who led the discussion of the proposed law noted that "city and county governments allow each year some 8,000 acres of money-making Willamette Valley agricultural land to be paved over for highways and built over for low-density residential developments." *Id.* He assured the Senate that, with passage of SB 101, "the farm land is going to be

---

[6] Residences were not among the nonfarm uses specially provided for, which included: public or private schools; churches; golf courses; parks, playgrounds or community centers owned and operated by a governmental agency or a nonprofit community organization; and utility facilities necessary for public service. Or Laws 1963, ch 577, § 3 and ch 619, § 1a.

At that time, ORS 215.203(2) (1963) and ORS 215.010 (1963) defined "farm use," which included "the construction and use of dwellings and other buildings customarily provided in conjunction with the farm use." Or Laws 1963, ch 577, § 2 and ch 619, § 3. Thus, a residence provided in conjunction with farm use, as opposed to a nonfarm residence, was apparently permissible under the statute as a "farm use." This was made explicit by Oregon Laws 1969, chapter 258, section 1, which added dwellings *used in conjunction* with farm use to the permitted uses in an EFU zone.

[7] Oregon Laws 1973, chapter 503, section 4(2) also provided that:

"The following non-farm uses may be established [in an EFU zone], subject to the approval of the governing body of the county[:] * * * [o]perations conducted for the exploration, mining, and processing of * * * aggregate and other mineral resources or subsurface resources."

Unlike the nonfarm dwelling section of the same statute, the aggregate mining section contains no reference to locating that activity only on "generally unsuitable land" for agriculture, as our decision today in *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), notes.

locked up much more tightly in EFU zones and this kind of procedures will not [go on] in the future." *Id.*

He explained that those agricultural landowners whose former "development rights" were restricted by new zoning should receive other benefits from the bill:

> "Also, some things that can go on and probably should go on, *but you need to go to your county government and get permission to put in such things as* * * * and of course the major one is, we have put a little crack in the door for *single family residential dwellings.* This has been a very sore point of contention with farmers that they couldn't, even if they had a rocky point that couldn't be farmed otherwise, they could not put in a building for a house for their son or * * * some other type of use, but *only on a finding by the governing body, and we have a very strict finding that must be made,* and I won't read this to you but you can see the test that has to be made before this kind of a use must be made within an EFU zone." *Id.* (Emphasis added.)

When asked what incentives the bill provided for farmers to remain in EFU zones, the senator answered: "The fact that we've opened it [*i.e.* EFU Zones] up now so that you can have a small amount of subdivision within it makes it very attractive to some people. They think that they're not buttoned down nearly as tightly."

■ It is apparent from the explanation given to the Senate that the 1973 bill was not designed to forbid partitioning of EFU land absolutely, nor to forbid establishment of nonfarm dwellings on EFU land. According to its sponsor's explanation before its passage, the 1973 bill permitted owners of existing farm land to build a nonfarm dwelling on land that could not be farmed, nor was the bill designed to prevent nonfarm dwellings and subdivision altogether.[8] The relevant part of SB 101 was codified as former ORS 215.213, became subsection (3)(d) thereof, and nine years later was copied by Clackamas County as part of the county's zoning and development ordinances. In context of the statutes then in effect, it appears that the legislature had in mind an identified division

---

[8] It is nonetheless true that the philosophy of SB 101 was "to keep the economical farm units intact." In Senate floor debate on June 13, 1973, that purpose was said to be demonstrated in the bill's inheritance tax provision, which permitted a farm unit to pass from one generation to another at farm use value.

of land, already in existence, to which the words "land" and "size of tract" were understood to refer as those words were used in describing the "generally unsuitable land" criterion.

Other provisions of law adopted contemporaneously support that understanding. Notably, the legislature, as part of the same act that adopted the "generally unsuitable land" criterion, conditioned county approval of "any proposed division of land" included within an exclusive farm use zone by requiring a county finding that "the proposed division of land is in conformity with the legislative intent set forth in" ORS 215.243. That statute declares necessary the preservation of a maximum amount of the limited supply of agricultural land "in large blocks." It was enacted as section 1 of chapter 503, Oregon Laws 1973. That and other restrictions on proposed divisions of land in EFU zones were enacted by section 9, now codified, with later amendments, as ORS 215.263(4). Former ORS 215.213 was section 4 of the same 1973 act.

Under the ordinance copied from that statute, approval of a proposed nonfarm dwelling in an EFU zone depends on several findings by the county, including a finding that the proposed dwelling "is situated upon generally unsuitable land for the production of farm crops and livestock." Because the wording of the ordinance does not clarify what specific area of "land" was intended to be evaluated in terms of its general unsuitability for farm use, we look to the context, *i.e.* to other findings required by other parts of that ordinance also copied from the 1973 statute, in order to determine whether a reading of subsection A as a whole aids in the interpretation of A.4.

Subsection A, also copied from the statute, imposes several additional limiting conditions besides the generally-unsuitable-land condition. Each proposed dwelling is subject to approval of the local decision-making body, approval that must be based on findings specific to that particular proposed use. Required findings include that the dwelling: is compatible with farm uses; is consistent with the intent and purposes set forth in ORS 215.243; does not interfere seriously with farming practices on adjacent lands; and does not materially alter the stability of the overall land use pattern of the area. All of those findings look to the surrounding land, not just the smaller area designated by its owner for a proposed change in

use. Specifically, under ZDO 402.05.A.1, the decision-making county must find in each case that a proposed nonfarm dwelling is consistent with the state land use policy set forth in ORS 215.243 to preserve large blocks of agricultural land even though that substantially limits alternative uses.

The county's interpretation of what tract or area of land is meant by the ordinance is consistent with its express language and its context as provided by other provisions of the ordinance.[9]

■     ZDO 402.05.A.4 permissibly conditions county approval of any proposed dwelling in part on a finding that the proposed dwelling site itself, considered in relation to and as part of the larger tract of commonly owned property, is "generally unsuitable for the production of farm crops and livestock."

The decision of the Court of Appeals is affirmed. The order of the Land Use Board of Appeals is affirmed.

---

[9] The applicable ordinance and the relevant statutes construed in *Clark v. Jackson County, supra*, note 7, spring from a different history, are differently worded, and carry a different effect.