Argued and submitted August 12, affirmed September 9, reconsideration denied November 12, petition for review denied December 22, 1992 (315 Or 271)

Clif KENAGY
and Lois Kenagy,
*Petitioners,*

*v.*

BENTON COUNTY,
Dennis Ranta and Judy Ranta,
*Respondents.*

(LUBA 91-097; CA A75580)

838 P2d 1076

Peter Livingston, Portland, argued the cause and filed the brief for petitioners.

Janet S. McCoy, Assistant Benton County Counsel, Corvallis, argued the cause for respondent Benton County. With her on the brief was Candace A. Haines, Benton County Counsel, Corvallis.

No appearance for respondents Dennis Ranta and Judy Ranta.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Benton County approved respondent Ranta's[1] application to construct a dwelling for his son and daughter-in-law on property in an EFU zone. Petitioners appealed to LUBA, which affirmed the county's decision and held that Ranta was a "farm operator" for purposes of ORS 215.283(1)(e) and the analogous provision of the county's development code (ordinance). Petitioners then sought our review. In *Kenagy v. Benton County,* 112 Or App 17, 826 P2d 1047 (1992),[2] we held that LUBA also had to determine whether the son's assistance was required in conducting farm operations, and we remanded for LUBA to do so.

On remand, LUBA reiterated its conclusion that Ranta is a farm operator and also concluded that, under the county's findings, he requires the assistance of his son. However, LUBA remanded the decision to the county on the ground that it had not made findings demonstrating that Ranta himself will remain "significantly involved" in farm operations. *See Hopper v. Clackamas County,* 87 Or App 167, 741 P2d 921 (1987), *rev den* 304 Or 680 (1988). Petitioners again seek review and contend that LUBA erred in its resolution of the two issues that it decided favorably to the county and Ranta.

ORS 215.283(1)(e) permits on EFU land:

"A dwelling on real property used for farm use if the dwelling is:

"(A) Located on the same lot or parcel as the dwelling of the farm operator; and

"(B) Occupied by a relative, which means grandparent, grandchild, parent, child, brother or sister of the farm operator or the farm operator's spouse, whose assistance in the management of the farm use is or will be required by the farm operator."

The acknowledged county ordinance contains a relative's dwelling provision that, as relevant to all but one of the issues before us, essentially duplicates the statute. The threshold

---

[1] As explained in *Kenagy v. Benton County,* 112 Or App 17, 19, n 1, 826 P2d 1047 (1992), we refer to respondent Dennis Ranta by our use of the name. The county is the only respondent that appears in this review.

[2] We will not restate the facts that are in that opinion.

question is whether the statute, as well as the ordinance, is directly applicable to the county's decision and our review. Although the substance of the two provisions is the same, the county appears to argue that its acknowledged ordinance is the only applicable one and that, under *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), we must "defer" to the county's interpretation of its own legislation, even though our interpretation of the state statute would not be similarly constrained.

■■ After a county's comprehensive plan and land use regulations have been acknowledged as complying with the statewide planning goals, the local legislation becomes directly applicable to most of its land use decisions, and the *goals* cease to be applicable. ORS 197.835(3)-(6); *Foland v. Jackson County*, 311 Or 167, 807 P2d 801 (1991); *Byrd v. Stringer*, 295 Or 311, 666 P2d 1332 (1983). The question is whether state *statutes* also cease to be directly applicable to a local government's post-acknowledgment land use decisions.

In *Kenagy v. Benton County, supra*, we reiterated the answer that we had given to that question in earlier cases:

"LUBA's reasoning, and the county's argument, turn almost entirely on the ordinance rather than the statute. Counties may enact more restrictive criteria than ORS 215.283 imposes for permitting the uses described in that statute. *Von Lubken v. Hood River County*, 104 Or App 683, 803 P2d 750 (1990), *adhered to* 106 Or App 226, 806 P2d 727, *rev den* 311 Or 349 (1991). However, they may not apply criteria that are inconsistent with or less restrictive than the statutory standards. *Newcomer v. Clackamas County*, 92 Or App 174, 186, 758 P2d 369, *modified* 94 Or App 33, 764 P2d 927 (1988). Given the posture of the issues, our analysis will therefore focus on the statute." 112 Or App at 20, n 2.

Similarly, in *Foland v. Jackson County, supra*, the Supreme Court repeated its earlier holding that the contents of acknowledged plans supersede the goals as the approval criteria for most kinds of local land use decisions made after acknowledgment. It noted, however, that "[t]he local government's decision must, of course, also comply with any relevant statutes." 311 Or at 180, n 10.

Indeed, the answer to the question would seem to be little short of self-evident. State land use statutes contain no

implication that local governments need not comply with them, as they must with any state statutes. Moreover, the reason why acknowledged local legislation, rather than the goals, applies to the locality's land use decisions is that the legislation has been found to comply with the goals, and the consistency of post-acknowledgment land use decisions with both is therefore deemed to be achievable without an independent application of the goals that the local legislation satisfies. ORS 197.250; ORS 197.251; *Foland v. Jackson County, supra,* 311 Or at 172; *see also Cope v. City of Cannon Beach,* 115 Or App 11, 18, 836 P2d 775 (1992). However, with rare exceptions, the acknowledgment process tests local plans and regulations only for compliance with the goals and it does not assure compliance with state statutes. Therefore, the rationale for not applying the goals directly after acknowledgment does not support the conclusion that statutory requirements also cease to be directly applicable to post-acknowledgment local land use decisions; indeed, it supports the opposite conclusion.

The only reason that there is *any* doubt about the applicability of state statutes in the post-acknowledgment land use decision-making process is found in *Smith v. Clackamas County,* 313 Or 519, 524, 836 P2d 716 (1992):

> "Once a county's comprehensive plan and implementing ordinances have been acknowledged, local land use decisions are to be measured against the plan and ordinances. *Foland v. Jackson County,* 311 Or 167, 180, 807 P2d 801 (1991); *Byrd v. Stringer,* 295 Or 311, 318-319, 666 P2d 1332 (1983) (interpreting ordinance so that it was 'consistent with state law' and applying acknowledged ordinance standards rather than goal standards to pre-existing lots).[5]

---

"[5] LUBA and the parties treat the proper disposition of this case on appeal as dependent on the interpretation given to ORS 215.283(3)(d). For the reasons just stated, that is not the applicable provision of law. We decide this case on the basis of the ZDO enacting the same language. We do note that sitings of nonfarm dwellings in EFU zones, where that requires a division or partitioning of farm land, currently appears to remain subject to certain statutes bearing directly on that issue. ORS 215.263(4) permits county approval of such a division of land 'only if the dwelling has been approved

under ORS 215.213(3) or 215.283(3).' Moreover, ORS 215.288 provides that the county *must* apply certain statutory provisions to land which has been zoned for exclusive farm use (EFU), when considering whether and where to permit certain dwellings. Those statutes contain the same criteria for nonfarm dwellings as the county ordinance here, so we need not tarry further before deciding this case over distinctions that may exist between such ordinances and statutes." (Emphasis in original.)

That language can be read to espouse either answer to the question or neither or both. It seems to say *seriatim* that acknowledged local legislation replaces state statutory requirements as the "applicable provisions of law" but that relevant statutes must nevertheless be applied to specific land use decisions, notwithstanding the acknowledged local legislation. In the end, the court appears to have concluded that it did not have to resolve the question. Given the uncertainty of the meaning of the *Smith* language, together with the inherent unlikelihood that the court meant to reject the language that we have quoted from the same page of its *Foland* opinion that it cited with approval in *Smith*, we conclude that *Smith* was not intended to change the law. Consequently, we conclude that relevant state statutes remain applicable to local land use decisions after acknowledgment and that ORS 215.283(1)(e) applies here.[3]

■ We turn to the merits. Petitioners first argue that LUBA erred by concluding that Ranta is a "farm operator." Although their contentions are more specific, the overriding theme is that Ranta's farming operations on the portion of the property over which he retains direct control have been sporadic and insubstantial, and his involvement with the operations on the portion of the property he leases to others is limited to a nominal veto authority over the planting of crops. Petitioners also argue that LUBA and the county gave undue weight to Ranta's status as the owner of the property in

---

[3] We reiterate that the county may, in at least some respects, enact legislation that is more restrictive of the use than the state statute is. However, with one exception, no issue is presented here that involves limitations under the ordinance that arguably go beyond those of the statute.

We do not imply that the existence of relevant statutes means that the local legislation is inapplicable to post-acknowledgment decisions. Rather, the statutes are also applicable and the decisions must satisfy any statutory requirements that are not embodied in the local law.

determining whether he is a farm operator. Petitioners would conclude that he is not.

We do not agree with those arguments. As the county found, Ranta's involvement with the farming operations on the leased part of the property, together with his past, present and planned expanded farm uses on the unleased part, are sufficient to bring him within the statute. Petitioners' suggestion that a greater quantitative level of farming activity should be required under ORS 215.283(1)(e) must be left to the legislature. It cannot be said, in the light of the county's findings, that Ranta's farming activities are insubstantial.

Petitioners also argue that LUBA erred in concluding that Ranta requires his son's assistance. They rely on ORS 215.203, OAR 660-05-030(4) and *Newcomer v. Clackamas County*, 92 Or App 174, 758 P2d 369, *modified* 94 Or App 33, 764 P2d 927 (1988), for the proposition that LUBA's conclusion concerning Ranta's need for a relative's assistance had to be based on existing uses that qualify as "current employment" of land for agricultural purposes. Instead, they claim that LUBA relied principally on Ranta's intention to expand the farm use on the unleased portion. LUBA correctly responded to that contention:

> "Concerning petitioners' arguments that the farm use for which the relative's assistance is required is prospective, ORS 215.283(1)(e) allows a dwelling for a relative whose assistance either is *or will be* required by the farm operator. Therefore, that it is the *proposed* activities on the nine acre portion of the property for which the challenged decision determines the assistance of a relative is required does not provide a basis under ORS 215.283(1)(e) for reversal or remand of the challenged decision. Additionally, petitioners allude to OAR 660-05-030(4) as an applicable standard. Under OAR 660-[05]-030(4), a dwelling 'customarily provided in conjunction with farm use' pursuant to ORS 215.283(1)([f]) may be approved only when the farm use that justifies the dwelling exists on the property. *Hayes v. Deschutes County*, ___ Or LUBA ___ (LUBA No. 91-218, April 6, 1992). However, OAR 660-[05]-030(4) is not applicable to the approval of a dwelling for the relative of a farm operator under ORS 215.283(1)(e). Further, there is nothing in ORS 215.283(1)(e) to support petitioners' position that the farm use of the subject property which justifies the need for a dwelling to house a relative to assist a farm operator,

must be in existence at the time the application for such relative's dwelling is submitted." (Footnote omitted; emphasis LUBA's.)

Petitioners argue, however:

"An analysis of the 'current employment' requirement does not stop there in this case, however, because it is also found in BCC 51.020(12) * * *. Reading LUBA's opinions in *Matteo [v. Polk County*, 11 Or LUBA 259 (1984), *affirmed without opinion* 70 Or App 179, 687 P2d 820 (1984),] and *Hayes [v. Deschutes County*, ____ Or LUBA ____ (LUBA No. 91-218, April 6, 1992),] together, 'the farm use,' as the term is used in [the county relative's dwelling provision] (if not in ORS 215.283(1)(e)(B)), should refer to the current employment of the land."

BCC 51.020(12) contains the county's definition of "farm use," which parallels the definition in ORS 215.203. The term "farm use" appears in ORS 215.283(1)(e) and (1)(f) and in the analog of ORS 215.283(1)(e) in the county ordinance. Assuming that, by its use of the definition, the county *might* have intended a more restrictive application of its own relative's dwelling provision than state law requires, *see* n 3, *supra*, its granting of the application indicates that that is not how it in fact interprets its provision and, specifically, that it does not interpret the provision as requiring a "current employment" standard. *See Clark v. Jackson County, supra.*

The parties' other arguments do not require responses.

Affirmed.