Argued and submitted April 30, affirmed June 25, 1997

Clyde COLLINS,
*Petitioner,*

*v.*

KLAMATH COUNTY,
*Respondent,*

*and*

Bernard L. SIMONSEN,
Oregon Cattlemen's Association and
Klamath Cattlemen's Association,
*Intervenors-Respondents.*

(LUBA No. 96-113; CA A96332)

941 P2d 559

Michael L. Spencer argued the cause for petitioner. On the brief was Mark Runnels.

Reginald R. Davis argued the cause and filed the brief for respondent.

Michael P. Rudd filed the brief for intervenor-respondent Bernard L. Simonsen.

No appearance for intervenors-respondents Oregon Cattlemen's Association and Klamath Cattlemen's Association.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Petitioner Collins complained to the planning director of Klamath County that respondent Simonsen (respondent)[1] was conducting cattle sales and certain other activities in an exclusive farm (EFU) zone, for which a conditional use permit was required and had not been obtained. Under section 54.020A of the county land development code, "farm use[s]" are permitted in EFU zones, while section 54.030C makes "stockyards and animal sales" subject to a conditional use permit requirement. The planning director sought a declaratory classification of respondent's use, pursuant to section 12.070 of the code, to ascertain within which of the two categories it came.[2]

The matter was heard by a county hearings officer, who ruled that respondent's activities did not require a permit. Petitioner appealed to the county governing body, which concluded:

"A literal reading of the Code indicates the *'Farm Use'* and *'Stockyard and Animal Sales'* definitions in the Code appear to not be consistent with each other when applied to the factual situation of this issue. In order to find consistency between the two sections, the Board has looked to the custom, culture, and past history of Klamath County and the State of Oregon as they apply to agricultural practices in this State. The Board has determined that the Hearings Officer correctly determined that the practices at issue fall under the definition of *'Farm Use'* and not *'Stockyard and Animal Sales.'* " (Emphasis in original.)

Petitioner next appealed to LUBA. It upheld the local code interpretation in the county's decision but also held that the county had not made necessary findings about the specific nature of respondent's use and how it satisfied the approval standards that the county found to be applicable.[3] Consequently, LUBA remanded the decision to the county.

---

[1] The other private respondents have not appeared.

[2] Section 12.070A provides:

"Intent - A land use, activity, building or structure that is not enumerated or otherwise defined by this code may be classified, interpreted, or defined without amendment to the language of this code."

[3] LUBA's opinion states that the county's decision does not "relate the general findings to the property at issue, and therefore does not establish that the proposed use complies with the approval standards."

■ Petitioner now seeks our review. Neither he nor respondent assigns error to or otherwise challenges LUBA's conclusion that the county had not made sufficient findings. Because that dispositive aspect of LUBA's decision therefore stands, it follows without more that our *holding* is to affirm LUBA's decision.

■ Nevertheless, for the reasons that we discuss below, we will address some of the issues that the parties raise. Their arguments to us mostly concern the county's and LUBA's legal analysis and conclusions. Those arguments present issues that are not only likely to arise on remand but almost necessarily must be considered in any further proceedings before the county. The legal standards that apply to the use and to the classification of the use are either dependent on or intrinsically intertwined with the factual determinations that LUBA has remanded for the county to make. Because the legal questions and the factual questions that are before the county are interdependent, it is debatable whether we should address the legal questions now as matters that will arise on remand, or should desist from doing so to allow the county to answer them in the first instance.[4] We will follow a middle ground. While we cannot and will not answer the questions definitively at this time, we believe that it is appropriate to comment on the parties' arguments and aspects of LUBA's discussion that seem to us to present potential problem areas on remand.

Petitioner argues that "stockyards and animal sales" are defined in the code; that respondent's use (as petitioner describes it)[5] comes within that definition as a matter of law and, accordingly, is subject to a conditional use permit requirement; and that the county's decision that the use was

---

[4] Under ORS 197.829(2), we may interpret local land use legislation *ab initio* where the local governing body has not interpreted the legislation or has not done so in a way that suffices for review. However, that statute does not apply to this situation. The governing body interpreted the code here, but the remand for factual findings entitles and requires the county to reconsider its interpretation in the light of its findings.

[5] Although the county must make findings on remand regarding the specific nature of the use, the parties' arguments posit certain assumptions about its basic nature. For purposes of discussing their legal contentions only, we accept their assumptions.

not subject to the requirement amounted to an amendment of the code masquerading as an interpretation.

Respondent argues that there was "an actual conflict" as to whether the use was a farm use or a stockyard and animal sale use under the code. Respondent further contends that his animal sale activities constitute a "farm use" under ORS 215.203 and, *apparently* for that reason, he considers it to be one of the "uses as of right" under ORS 215.213(1)[6] and ORS 215.283(1) as interpreted in *Brentmar v. Jackson County*, 321 Or 481, 900 P2d 1030 (1995), which counties may not subject to a conditional use permit requirement.

In rejecting petitioner's argument, LUBA first indicated that it was required to review the county governing body's interpretation of the county code under the deferential standard required by ORS 197.829 and *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992). LUBA continued:

> "We agree with [respondent] that the [county] commissioners could conclude that there is a conflict between what the state statutes allow outright as farm uses and what farm uses are subject to restriction under the county code. Furthermore, we agree with [respondent] that the county must interpret [section] 54.030(C) to avoid any conflict with state statutes. The county appropriately used the quasi-judicial proceeding allowed under [section] 12.070 to clarify the use subject to this dispute."

It is unclear to us whether and to what extent the county governing body's decision is intended to be (1) an interpretation of the county code provisions or (2) an application of state statutory requirements that the county understood to prevail over and govern the way in which it was required to apply the local provisions. Although the hearings officer's decision makes express mention of state statutory requirements, the operative language in the governing body's decision, quoted above, does not. It refers only to the local

---

[6] Although respondent relies on ORS 215.213(1), that statute is not applicable to Klamath County. We will assume that respondent's intended reference is to ORS 215.283(1). *See Marquam Farms Corp. v. Multnomah County*, 147 Or App 368, 376, 936 P2d 990 (1997). Respondent does not particularize where, in either ORS 215.213(1) or ORS 215.283(1), he finds any mention of the use that he claims he is entitled to conduct.

code provisions. *See Derry v. Douglas County*, 132 Or App 386, 888 P2d 588 (1995). If the governing body's interpretation of the local provisions is derived from its understanding of the statutory requirements, as respondent argues and LUBA suggests, its present decision does not clearly communicate that fact or adequately explain it.

■ ■ As we understand respondent's argument and LUBA's opinion, the principal, if not essential, justification for the county's decision that the use should be classified as a permitted "farm use" rather than a conditionally permitted "stockyard and animal sale" activity under the *local* code is that, under *Brentmar*, applicable *state statutes* require respondent's use to be permitted outright. Given that understanding, we do not agree with LUBA's statement of its standard of review. If a local land use decision is controlled by statute, the meaning of the statute is a question of state law; a governing body's interpretation of a statute is not subject to the deferential *Clark* review standard and, when a statute controls, the deferential review standard is also inapplicable to a local decision that nominally or purportedly interprets related local provisions instead of the statute itself. *Marquam Farms Corp. v. Multnomah County*, 147 Or App 368, 380, 936 P2d 990 (1997); *Forster v. Polk County*, 115 Or App 475, 478, 839 P2d 241 (1992). The meaning of the statute, rather than the local provisions, is the issue, notwithstanding any contrary characterization in the local decision. *See also Leathers v. Marion County*, 144 Or App 123, 131, 925 P2d 148 (1996).

Here, the thrust of respondent's argument is that the use in question comes within the definition of "farm use" in ORS 215.203 and, therefore, must necessarily be permitted outright *anywhere in any EFU zone* under ORS 215.213(1) and ORS 215.283(1), as interpreted in *Brentmar*. Accordingly, respondent suggests, the local legislation must be interpreted consistently with that statutory requirement. However, respondent does not explain the connection that he perceives between ORS 215.203 and ORS 215.213 and ORS 215.283 and/or between ORS 215.203 and *Brentmar*.

The interpretation and the holding in *Brentmar* relate only to ORS 215.213 and ORS 215.283. *Lindquist v.*

*Clackamas County*, 146 Or App 7, 14, 932 P2d 1190 (1997). *Brentmar's* holding has no *direct* bearing on ORS 215.203, and there is no basis for concluding that what *Brentmar* does hold regarding ORS 215.213(1) and ORS 215.283(1) extends inferentially to ORS 215.203. The farm uses that are listed in ORS 215.203 are not replicated in the enumeration of uses in ORS 215.213(1) or ORS 215.283(1), explicitly or implicitly. Indeed, the latter statutes are concerned with *ancillary or nonfarm* uses that are permissible in EFU zones, rather than with farm uses of the kind defined in ORS 215.203. We do not now imply that ORS 215.203 does not—or does—apply directly to the county's decision for some other reason. However, that statute does not come within the holding or rationale of *Brentmar*, and it does not apply to the county's decision by reason of *Brentmar*.

■ Petitioner also contended before LUBA, and repeats here, that the county governing body violated the Public Meetings Law, ORS 192.610 to ORS 192.690, and an analogous local provision, by recessing the public hearing briefly to confer with the county's legal counsel. LUBA held that there was no violation of the local provision and that it had "no jurisdiction to enforce the provisions of ORS 192.610 to 192.690." Petitioner assigns error to both conclusions. We disagree with his contentions that there was a violation of public meetings requirements, under either the state statute or the local provision.[7]

The parties' remaining arguments do not require further discussion.

Affirmed.

---

[7] It is unnecessary for us to address LUBA's conclusion that it lacked *jurisdiction* to enforce the statute. There is at least an arguable difference, however, between *enforcing* the Public Meetings Law and holding that a violation of that statute can give rise to a reversible error in a land use decision.