Argued and submitted May 5, affirmed July 20, 2016

John GILMOUR,
*Respondent,*

*v.*

LINN COUNTY,
*Respondent Below,*

*and*

FRIENDS OF LINN COUNTY,
Goal One Coalition, Katie Kohl, Paul Harcombe,
Susan Maresh, Chet Houser, Rebecca Bond,
and Jessica Pankratz,
*Petitioners.*

Land Use Board of Appeals
2015093; A161668

379 P3d 833

Sean T. Malone argued the cause and filed the brief for petitioners.

Alan M. Sorem argued the cause for respondent. With him on the brief was Saalfeld Griggs PC.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## GARRETT, J.

Petitioners[1] seek judicial review of a final opinion and order of the Land Use Board of Appeals (LUBA), concluding that certain of respondent's activities on his property, which is zoned for exclusive farm use (EFU), constitute "preparation" of straw for human or animal use and are therefore a "farm use" within the meaning of ORS 215.203(2)(a). LUBA's order reversed an earlier decision by Linn County Board of Commissioners (county) that respondent's activities are not a "farm use," and are thus subject to certain review and siting requirements. On appeal, petitioners contend that LUBA should have deferred to the county's determination. As explained below, we conclude that the county's decision was not one to which LUBA was required to defer, and, because we agree with LUBA's construction of ORS 215.203, we affirm.

We take the following facts, which are largely procedural, from the county's order and from LUBA's opinion. *Keicher v. Clackamas County*, 175 Or App 633, 635, 29 P3d 1155 (2001). Respondent owns an approximately 92-acre property in an EFU zone, most of which is farmed in grass seed, and on which he operates a straw compression facility. Respondent cuts straw from his property and from other farms in the area and bales it in the field. Respondent then transports the bales to his compression facility, where they are stored, compressed, and loaded onto trucks for shipment to market. Approximately 3,000 to 5,000 tons of the straw compressed by respondent annually comes from his grass seed farm, while an additional 15,000 to 25,000 tons are harvested from other farms. Apart from being baled and compressed, the straw remains unchanged in substance from the time that it is harvested in the field to when it is shipped to market.

Respondent submitted a request to Linn County for an interpretation of the Linn County Code (LCC) to determine whether his straw compressing operation amounts to "preparation" of a farm crop (a "farm use" that is permitted

---

[1] We refer to the parties by their designations on appeal. *Davenport v. City of Tigard*, 121 Or App 135, 137 n 2, 854 P2d 483 (1993).

outright on land zoned for EFU under the LCC), or "processing" (a nonfarm use). The LCC provision that defines "farm use" is modeled after ORS 215.203(2)(a),[2] which provides, in part:

> "'[F]arm use' means the current employment of land for the primary purpose of obtaining a profit in money by raising, harvesting and selling crops or the feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or honeybees or for dairying and the sale of dairy products or any other agricultural or horticultural use or animal husbandry or any combination thereof. *'Farm use' includes the preparation, storage and disposal by marketing or otherwise of the products or by-products raised on such land for human or animal use.*"

(Emphasis added.) Unlike "preparation," "processing" of farm crops under the LCC is permitted on EFU land only conditionally, either as a "commercial activit[y] in conjunction with farm use," or when performed on a farm operation that provides at least one-quarter of the farm crops processed at the facility.[3] LCC 928.320(B)(10), (20).

The county concluded that respondent's straw compressing operation is not a "farm use" because it is not "preparation" of farm products. Rather, the county determined that the initial baling of the straw, as the preliminary measure taken to make the straw transportable to respondent's compression facility, constitutes "preparation," but that the additional step of compressing the straw, which the county found increases the product's value before it is resold, amounts to "processing." Additionally, because respondent's farm does not provide at least one-quarter of the farm crops "processed" at the facility, the county concluded that respondent's operation failed to meet the criteria

---

[2] In situations where the local ordinance reiterates or paraphrases a state statute, "[w]e refer to the statutes rather than their local analogs." *Friends of the Creek v. Jackson County*, 165 Or App 138, 141 n 1, 995 P2d 1204 (2000) (citing *Forster v. Polk County*, 115 Or App 475, 839 P2d 241 (1992)).

[3] Respondent had previously applied for and received a conditional use permit that, under LCC 920.100(B)(48), allowed him to operate the straw compression facility as a "commercial activit[y] in conjunction with farm use." That permit was in effect at the time of respondent's request for an interpretation of the county code. Respondent's request was submitted in response to a number of complaints alleging that he had been violating that conditional use permit.

in LCC 928.320(B)(20), a code provision modeled on ORS 215.283(1)(r), which allows a facility for the processing of farm crops on EFU land if that land provides at least one-quarter of the farm crops to be processed at the facility. The county then determined that respondent's operation is more akin to a "commercial activit[y] in conjunction with farm use" under the LCC provisions that implement ORS 215.283(2)(a) (authorizing certain nonfarm uses on EFU land, subject to approval by the local governing body).

Respondent appealed to LUBA, which reversed the county's decision. Citing our decision in *Kenagy v. Benton County*, 115 Or App 131, 838 P2d 1076, *rev den*, 315 Or 271 (1992), LUBA initially determined that, because the county interpreted a land use regulation which implements a state statute, ORS 215.203(2)(a), the county's interpretation was not entitled to deference on review. LUBA then concluded that the county improperly construed the applicable law when it determined that respondent's straw compression operation did not meet the definition of "farm use" in ORS 215.203(2)(a). LUBA reasoned:

> "'Preparation' is not defined in ORS 215.203(2)(a) or OAR 660-033-0020(7). In order to ascertain the legislature's intent in using the undefined word 'preparation,' we look to the dictionary definition. As relevant, 'preparation' is defined to mean: '1 a: the action or process of making something ready for use or service[.]' *Webster's Third New Int'l Dictionary* 1790 (unabridged ed 2002). Although not specifically defined in OAR 660-033-0020(7)(a), 'preparation' is described in OAR 660-033-0020(7)(b)(A) as including without limitation 'cleaning, treatment, sorting, or packaging of the products * * * [.]' 'Preparation,' therefore, includes 'packaging' of the straw. Compressing the baled straw is similar to or the same as packaging that straw.

> "We conclude that under the plain meaning of the word 'preparation,' the act of compressing straw in the manner and under the conditions described in [respondent's] application and the decision constitutes preparation of the straw, and could also constitute packaging the straw under OAR 660-033-0020(7)(b)(A). As far as we are informed, the compression simply makes the bales easier to transport * * *, but does not change the straw in any way, or change the

fact that it is ready for use * * * after it is baled and remains ready for use * * * after it is compressed.

"We recognize that the concepts of 'preparation' and 'processing' in the [EFU] zoning context are sufficiently subjective, ambiguous and potentially overlapping that there will be occasions where a case can be made for determining that a particular use is 'preparation,' and therefore a farm use, or 'processing' and therefore something other than a farm use. While a change in the assumed facts in this case might lead us to a different conclusion, we conclude the proposed use is essentially an extension of the initial baling of the straw, which occurs in the field, that is simply further preparation in the facility, and therefore accurately characterized as a farm use."

LUBA issued a final opinion and order reversing the county's earlier determination pursuant to ORS 197.835(9)(a)(D), and this appeal followed.

On judicial review, petitioners seek reversal of LUBA's order based on several interrelated grounds. Petitioners' primary contention, as we understand it, is that LUBA erred when it determined that respondent's straw compression operation was "preparation" without explicitly addressing whether the operation could also constitute "processing," a nonfarm use. According to petitioners, such an analysis was required because of the *county's* determination that respondent's activities amount to "processing." Thus, although not expressly stated as such, the essence of petitioners' argument is that the county's decision was entitled to a measure of deference before LUBA. For his part, respondent urges us to affirm LUBA's order based on the plain text and context of ORS 215.203(2)(a), which, according to respondent, support LUBA's conclusion that respondent's use meets the statutory definition of "farm use." Respondent also argues that, because the county's decision involved the application of state statutes, the meaning of which is a question of state law, the county's decision was not one to which LUBA was required to defer. For the reasons that follow, we agree with respondent.

As it is central to our analysis, we begin with the parties' disagreement as to whether the county's determination

that respondent's activities are not a "farm use" was entitled to deference. Pursuant to ORS 197.850(9)(a), we review LUBA's order to determine whether it is "unlawful in substance or procedure." One way that LUBA's order can be "unlawful in substance" is if, "in contravention of the standard of review set out at ORS 197.829(1), LUBA substitutes its own interpretation of a local government's land use regulations for a plausible interpretation of those regulations offered by the local government." *Siporen v. City of Medford*, 349 Or 247, 261, 243 P3d 776 (2010). ORS 197.829(1) requires "LUBA (as well as a reviewing court) to defer to a local government's interpretation of its land use regulations that is 'plausible, and is not inconsistent with the "express language" of the provisions at issue or the purposes or policies underpinning them.'" *Green v. Douglas County*, 245 Or App 430, 437, 263 P3d 355 (2011) (quoting *Siporen*, 349 Or at 266). On the other hand, a local government's interpretation of a land use regulation that implements *state* law is not entitled to deference under ORS 197.829. *See Collins v. Klamath County*, 148 Or App 515, 520, 941 P2d 559 (1997) ("[W]hen a statute controls, the deferential review standard is also inapplicable to a local decision that nominally or purportedly interprets related local provisions instead of the statute itself. The meaning of the statute, rather than the local provisions, is the issue, notwithstanding any contrary characterization in the local decision." (Internal citations omitted.)); *Kenagy*, 115 Or App at 136 (state statutes remain applicable to local land use decisions after acknowledgment).

Respondent is correct that the county's interpretation of his activities involved a determination of whether they are a "farm use" as defined by ORS 215.203(2)(a). Because that is a matter of statutory construction, it is not one on which LUBA was required to defer. *See Riggs v. Douglas County*, 167 Or App 1, 10, 1 P3d 1042 (2000) (explaining that "no principle of deferential review was applicable" in determining whether an activity was a "farm use" within the meaning of the statutory definition in ORS 215.203); *see also Forster*, 115 Or App at 478 ("Insofar as the state and local provisions are materially the same in substance or the former contain requirements that the latter does not contain or is interpreted as not containing, the statute and rule

must be interpreted and applied by the county in making its decision, subject to LUBA's and our unrestricted review.").

Although we conclude that LUBA did not err by failing to defer to the county's interpretation, it remains for us to consider whether LUBA correctly interpreted ORS 215.203(2)(a) in determining that respondent's activities fall within the meaning of the term "preparation." *See Warburton v. Harney County*, 174 Or App 322, 25 P3d 978, *rev den*, 332 Or 559 (2001) (applying *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993) methodology to question of statutory interpretation in land use context). In doing so, "[w]e look to the text of the statute and its context, which includes other provisions of the same statute and other related statutes, as well as the statutory framework within which the law was enacted." *Warburton*, 174 Or App at 326 (internal quotation marks and citations omitted).

ORS 215.203 authorizes counties to adopt ordinances establishing EFU zones, which limit the use of the land therein to "farm use except as otherwise provided in ORS 215.213, 215.283 or 215.284." ORS 215.203(1). For purposes of that statute, the term "farm use" is defined as:

> "[T]he current employment of land for the primary purpose of obtaining a profit in money by raising, harvesting and selling crops or the feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or honeybees or for dairying and the sale of dairy products or any other agricultural or horticultural use or animal husbandry or any combination thereof. *'Farm use' includes the preparation, storage and disposal by marketing or otherwise of the products or by-products raised on such land for human or animal use.*"

ORS 215.203(2)(a) (emphasis added). "Preparation," as it is used in ORS 215.203(2)(a), is further defined in OAR 660-033-0020(7)(b):

> "(A)  'Preparation' of products or by-products *includes but is not limited to the cleaning, treatment, sorting, or packaging of the products or by-products*; and

> "(B)  'Products or by-products raised on such land' means that those products or by-products are raised on the

farm operation where the preparation occurs or on other farm land provided the preparation is occurring only on land being used for the primary purpose of obtaining a profit in money from the farm use of the land."

(Emphasis added.) When read together, the statute and rule make clear that "farm use" includes, but is not limited to, activities such as the "treatment, sorting, or packaging" of products or by-products for human or animal use. Although the term "packaging" is not defined by rule or statute, it is a term of common usage, which we assume the legislature intended to carry its "plain, natural, and ordinary meaning." *PGE*, 317 Or at 611; *see also City of Lake Oswego v. Albright*, 222 Or App 117, 120, 193 P3d 988 (2008) ("Unless a word is defined by statute or is a term of art, we generally look to the dictionary to determine a word's ordinary meaning."). The dictionary defines "packaging" as "an act or instance of packing," and, although "packing" is defined variously, as pertinent here, it means "the act or process of preparing goods for shipment or storage" or "a method of inserting into a shipping container with appropriate protective covering, cushioning, or bracing," *Webster's Third New Int'l Dictionary* 1618 (unabridged ed 2002). Based on the foregoing, we agree with LUBA that the compression of baled straw to prepare it for shipment is similar to, or the same as, packaging of straw, which serves the purpose of making the bales easier to transport to market. The record reflects that the straw remains unchanged in substance from when it is first baled in the field to when it is packaged for resale; petitioners have not pointed to evidence that says otherwise. Thus, LUBA's order was consistent with the meaning of "farm use," both under ORS 215.203(2)(a) and OAR 660-033-0020(7)(b).

Petitioners' remaining argument pertains to LUBA's failure to explain why respondent's activities did not constitute "processing," in light of the county's contrary conclusion below. Petitioners seize on language in LUBA's order that the concepts of "preparation" and "processing" are "subjective, ambiguous and potentially overlapping" in support of their assertion that LUBA ended its inquiry prematurely when it determined that respondent's operation is a "farm use" without addressing whether it could also be "processing," a nonfarm use.

We understand petitioners' argument to be, in part, a restatement of their contention that, in reversing the county's decision, LUBA failed to afford the deference that was required. As we have already explained, LUBA was not required to defer to the county's conclusion (or corresponding analysis) under ORS 215.203(2)(a) or OAR 660-033-0020(7)(b). Nor was LUBA's analysis incomplete because it did not expressly address whether respondent's operation could also be "processing"; rather, implicit in LUBA's conclusion that respondent's operation entailed "preparation" is the conclusion that it was *not* "processing."

To the extent that petitioners argue that respondent's operation could simultaneously be both "preparation" and "processing," we disagree. The statutory framework makes clear that "preparation" of farm crops is considered a "farm use," whereas "processing" is not. Moreover, under ORS 215.203(1), farm uses are treated as a distinct category from nonfarm uses, which are exceptions to the uses that are normally allowed in an EFU zone. *See* ORS 215.203(1) ("Land within [EFU zones] shall be used exclusively for farm use except as otherwise provided in ORS 215.213, 215.283 or 215.284."); *see also Warburton*, 174 Or App at 328 ("The 'exclusively' and 'except as otherwise provided' language evidences a legislative intent to encourage the use of EFU-zoned land solely for farm use and to treat the permitted nonfarm uses in the listed statutes as exceptions to the use of that land for farming activities."). The same is true of LCC 920.100(B)(48), which defines "commercial activities in conjunction with a farm use," in part, as activities that "are *not* defined as a farm use." (Emphasis added.) Thus, LUBA's conclusion that respondent's activities were "preparation" and, therefore, a "farm use," necessarily resolved the inquiry as to whether those activities could also be a nonfarm use.

For the foregoing reasons, we conclude that LUBA did not err in reversing the county's decision.

Affirmed.